WHITNEY v. WHITNEY ELEVATOR & WAREHOUSE CO. et al.

(Circuit Court, W. D. New York.   June 7, 1910.)

1. COURTS (§ 366*)—FEDERAL COURTS—RULES OF DECISION—STATE STATUTES—DECISION IN HIGH STATE COURT.

A decision of the New York Court of Appeals that a mortgage given to secure payment of alimony by a husband during the life of his wife, awarded by an ordinary divorce decree, could not be enforced as to alimony accruing after the husband's death in the absence of an agreement by the husband to pay alimony during the wife's life, involved construction of the state divorce statutes, and was binding on federal courts sitting in such state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 957; Dec. Dig. § 366.*

State laws as rules of decisions in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. HUSBAND AND WIFE (§ 280*)—SEPARATION AGREEMENT—SUBSEQUENT DIVORCE—ALIMONY—MORTGAGES.

A separation agreement between husband and wife provided that he should pay her $250 per month during her life if she should not marry until after the husband's death. Thereafter, she sued for and was granted a divorce, the form of the decree being agreed on between attorneys for both, and provided that except for the substitution of a mortgage on different property for a mortgage previously executed to secure payment of the amount previously agreed on, the decree should not affect such prior agreement which should remain in full force. *Held*, that the decree did not affect the prior agreement as to the payments to be made by the husband for the benefit of the wife, and that she was entitled by reason of such agreement to enforce the mortgage for installments accruing after the husband's death.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1055; Dec. Dig. § 280.*

Separation agreements, see note to Daniels v. Benedict, 38 C. C. A. 608.]

3. DIVORCE (§ 244*)—ALIMONY—SECURITY—MORTGAGES—FORECLOSURES.

Where an agreement between husband and wife for a separate maintenance contained in a divorce decree provided for payment of installments of alimony monthly, and also declared that in case of default for more than 10 days the trustee might elect to declare the whole transfer secured by the mortgage due, and foreclose on such default, the wife was entitled to foreclose for such sum as would equal the amount she would probably receive during the probable continuance of her life computed in accordance with her expectancy under the Northampton tables.

[Ed. Note.—For other cases, see Divorce, Dec. Dig. 244.*]

4. DIVORCE (§ 244*)—ALIMONY—SECURITY—COMPROMISE.

Where a husband executed a mortgage on certain real property to secure installments of alimony to accrue monthly during the life of his wife, and thereafter conveyed the property to a corporation subject to the mortgage, but the corporation did not assume the mortgage, and after the death of the trustee appointed to enforce the security for the wife's benefit, and while no successor had been appointed, the wife, being informed that her husband could no longer afford to pay the amount of the installments specified, agreed to accept a lesser sum in full satisfaction thereof to be paid by the corporation, such settlement was based on a sufficient consideration, and barred the wife's right to recover the difference in subsequent foreclosure proceedings.

[Ed. Note.—For other cases, see Divorce, Dec. Dig. § 244.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. MORTGAGES (§ 417*)—TRUSTEE—RIGHT OF BENEFICIARY TO SUE.

Where a substituted trustee under a mortgage securing installments· of alimony refused at the request of the beneficiary to sue to foreclose, the beneficiary could sue in her own name, joining the trustee as a defendant.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1235; Dec. Dig. § 417.*]

6. MORTGAGES (§ 492*)—FORECLOSURE—LIENS—DETERMINATION.

In a suit to foreclose a mortgage, which was a subsequent lien on certain real property, the court would not fix the amount due under the prior liens.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1438; Dec. Dig. § 492.*]

7. COURTS (§ 352*)—FEDERAL COURTS—PROCEDURE—TRIAL—FINDINGS OF FACT AND CONCLUSIONS OF LAW.

Findings of fact and conclusions of law are not made in equity suits in the federal courts.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 352.*]

In Equity. Bill by Belle N. Whitney against the Whitney Elevator· & Warehouse Company and others. Decree for complainant.

Tracy, Chapman & Tracy (William G. Tracy, of counsel), for complainant.

Perkins, Duffy & McLean (John Desmond, of counsel), for defendant Whitney Elevator & Warehouse Company.

Harris, Havens, Beach & Harris (Edward Harris, of counsel), for· defendant Rochester Savings Bank.

HOLT, District Judge. The plaintiff, a citizen of Connecticut,. brings this suit against citizens of New York to foreclose a mortgage given as security for the payment of certain amounts directed, by a decree of divorce, to be paid periodically by the husband to the wife dur·· ing her natural life. The question involved is whether the liability to make such payments and the mortgage given to secure them continued. in force after the husband's death.

In 1880, the plaintiff, Belle N. Whitney, was married to James W.. Whitney. In 1889, Mr. and Mrs. Whitney, together with William J. Ashley, as trustee for Mrs. Whitney, entered into an agreement of separation. By this agreement, Mr. and Mrs. Whitney agreed to live apart, and Mr. Whitney agreed to pay to Mrs. Whitney, during the time she should "remain the wife or widow of the party of the first part" (James W. Whitney), "or during her life, if she shall not marry until after the death of the party of the first part," $3,000 a year, in equal monthly payments in advance. The agreement also provided for the payment to Ashley, as trustee for Mrs. Whitney, of a certain sum with which to provide her a residence. It also provided that,. as security for the payment of the annuity of $3,000, Mr. Whitney was to execute and deliver to Ashley, as trustee for Mrs. Whitney, a mortgage on certain land in the city of Rochester. The agreement also· contained a covenant by Mrs. Whitney that she would, at any time,. upon request, release her inchoate right of dower in any of the property of Mr. Whitney, by joining with him in any mortgage or convey--

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes·

ance thereof, or in such other manner as would effectually release the same. The provisions contained in this agreement of separation were duly complied with. Mr. Whitney executed the mortgage to secure the payment of the annuity, and the sum of $250 a month was for some years thereafter duly paid to Mrs. Whitney. In 1893, Mrs. Whitney brought an action against her husband for an absolute divorce. The defendant appeared by attorneys, but did not answer. The case was referred to a referee to take proof. Proofs were taken, and on such hearing counsel appeared for the defendant and cross-examined some of the witnesses. The referee reported in favor of an absolute divorce. After such report was made, the counsel for the parties came together and agreed upon the details and form of a decree, and such decree was presented to the judge and signed by him. This decree, among other things, provided that the "said defendant James W. Whitney pay to the plaintiff Belle N. Whitney the sum of three thousand dollars per year from the first day of March, 1893, for and during her natural life, as a suitable allowance to said Belle N. Whitney, the plaintiff, for her maintenance and support"; and the decree further provided that the said sum of $250 monthly be paid to William J. Ashley, as trustee for the plaintiff, and be paid by him to Mrs. Whitney for her support and maintenance. The decree further provided, in substance, that the mortgage previously given, pursuant to the provisions of the agreement of separation, should be canceled and discharged, and that Mr. Whitney should give another bond and mortgage, on other real estate, as security for the payment of the $3,000 awarded by the decree for the support of Mrs. Whitney. The decree further provided that "except as hereinbefore specifically provided this decree shall not in any wise affect said agreement of May 13, 1889" (the separation agreement), "between the parties to this action, which said agreement shall remain unimpaired and in full force, except the provision in the second subdivision thereof for an allowance of $3,000 annually to the plaintiff in this action, and also excepting the fifth subdivision thereof" (the provision for the mortgage on certain specific property, for which the new mortgage was· substituted), "all of which subdivision is hereby abrogated and annulled; and the plaintiff and said trustee shall discharge the mortgage therein mentioned" (that is, the mortgage given under the separation agreement).

At the time of the entry of the decree, the mortgage held by Ashley under the separation agreement was canceled, and Mr. Whitney gave a new bond, secured by a mortgage upon different real estate in Rochester, as provided by the decree. The bond was in the penal sum of $100,000, conditioned for the payment by Mr. Whitney to Mr. Ashley, as trustee for Mrs. Whitney, of the sum of $250 a month, during the natural life of said Belle N. Whitney, and the bond and the accompanying mortgage recite that they are given pursuant to the judgment of divorce. This is the mortgage which this suit is brought to foreclose. In 1895, the property described in this mortgage was conveyed by Mr. Whitney to the defendant the Whitney Elevator & Warehouse Company by a conveyance which was made subject to said mortgage, but in which the Whitney Elevator & Warehouse Company did not

assume the payment of said mortgage. In 1897, Ashley, the trustee of the bond and mortgage, died. No successor was appointed in his place until October, 1909. The payments of $250 a month provided for by the decree were made until June 1, 1898. In October, 1898, a written agreement was executed between Mr. and Mrs. Whitney and the Whitney Elevator & Warehouse Company, which recited that Mr. Whitney was no longer able to pay the installments of $250 a month, as fixed by the decree, and by which the Whitney Elevator & Warehouse Company agreed to pay to Mrs. Whitney, and Mrs. Whitney agreed to accept in full discharge of the payments under the decree, the sum of $150 a month until June 1, 1900. On June 1, 1900, the same parties made another agreement, by which the Whitney Elevator Company agreed to pay to Mrs. Whitney, and Mrs. Whitney agreed to accept in full settlement, $166.66 a month from June 1, 1900, to June 1, 1903. On June 1, 1903, and on August 1, 1906, similar agreements were made, the last agreement expiring July 1, 1909. Under these agreements, the amounts provided to be paid in them were paid by the Whitney Elevator Company to Mrs. Whitney monthly until July 1, 1909. On October 1, 1907, James W. Whitney died. After July 1, 1909, the Whitney Elevator Company, as well as the representative of the estate of James W. Whitney, took the position that the death of James W. Whitney had terminated his obligation under the divorce decree to pay any further amount to Mrs. Whitney for her support, and that therefore the mortgage given as security for such payments was no longer operative. The mortgage contained a provision that if there was a default for 10 days in the payment of any monthly installment the mortgagee could elect to have the whole amount secured by the mortgage immediately payable. In October, 1909, John L. Standart was duly appointed trustee in place of said Ashley, and on October 16, 1909, Standart notified the Whitney Elevator Company of his appointment as trustee, and demanded payment of the sums of $250 falling due on the first days of June, July, August, September, and October, 1909. Such demand was not complied with, and more than 10 days thereafter Standart, as such trustee, exercised the option contained in such mortgage, declared the whole amount secured thereby due and payable, and so notified the Whitney Elevator Company. The plaintiff is 61 years of age, and her probable duration of life is 8.161 years, during which time the sum of $24,483 would become due, by the terms of the bond and mortgage, and complainant claims that such amount is now due under the bond and mortgage. After Standart made such demand, Mrs. Whitney requested him, as such trustee, to bring a suit to foreclose the mortgage, but he declined to do so in a letter in which he stated that he so declined "on account of the adverse decision of the New York Court of Appeals in a similar case." Thereupon Mrs. Whitney brought this suit to foreclose the mortgage, joining Standart, as such trustee, as a defendant.

The New York Court of Appeals has decided, in the case of Wilson v. Hinman, 182 N. Y. 408, 75 N. E. 236, 2 L. R. A. (N. S.) 232, 108 Am. St. Rep. 820, that a mortgage given to secure the payment of alimony by the husband during the life of the wife, awarded by an

ordinary decree of divorce, could not be enforced as to alimony accruing after his death.  This decision appears to be based on the reasoning that as an undivorced wife is not legally entitled to any provision for her support out of her husband's estate after his death except her right of dower, there is no reason why a divorced wife should have a more favorable provision for her support.  In the case of Wilson v. Hinman it did not affirmatively appear that there had been any agreement between the parties that the amount allowed to the wife should continue to be paid to her after the death of her husband, if she survived him, other than the usual expression in the decree that the alimony should be paid to her during her life.  Chief Justice Cullen, in his opinion in that case, substantially admits that if there was a specific agreement between the husband and wife that the allowance made to her should continue after the husband's death such agreement would be valid.  He says:

"It may very well be that by the agreement of the parties alimony might be awarded in a different form from that provided by statute; that is to say, the parties might agree * * * that an allowance should be made to the wife that would be binding upon the husband's estate after his death.  An agreement of that character would in no way contravene public policy, and the performance of it would doubtless be enforceable by the court.  It is on this ground that the decree in Storey v. Storey (125 Ill. 608 [18 N. E. 329, 1 L. R. A. 320, 8 Am. St. Rep. 417]) proceeded.  The present case is barren of any such feature."

The complainant's counsel has argued that the decision in Wilson v. Hinman was erroneous, and that the contrary rule, as it had existed in the state for many years under the decision in Burr v. Burr, 10 Paige (N. Y.) 20, affirmed in the Court of Errors, in 7 Hill (N. Y.) 207, is in principle correct, and should be followed by the federal courts.  But I think it clear that on such a question, involving the construction of the statutes of divorce of the state of New York, the federal courts are bound to follow the decisions of the state courts, and that, as the case of Wilson v. Hinman appears to be the latest decision of the Court of Appeals upon the question, it must be assumed that the case of Burr v. Burr is no longer authority.

The real question in this case is whether this decree was a simple decree of divorce, fixing alimony, or whether there is sufficient evidence of an agreement between the parties that the provision which was made for Mrs. Whitney was to continue during her natural life.  Upon that question the evidence in this case seems to me to be satisfactory and decisive in favor of the claim of Mrs. Whitney.  The original agreement of separation was a simple contract.  In making such a contract, the parties to it, as in the case of any other contract, were free to insert such stipulations as they saw fit.  By the express provisions of that agreement, Mr. Whitney agreed to pay to his wife, "during the time the party of the second part" (Mrs. Whitney) "shall remain the wife or widow of the party of the first part" (Mr. Whitney), "or during her life, if she shall not marry until after the death of the party of the first part, the annual sum of $3,000."  It seems to me that there could not be more explicit language to show an agreement that the annual payment of $3,000 should continue during the

natural life of Mrs. Whitney, unless she should marry again before the death of Mr. Whitney. It implies that even if she does marry again after his death the payment shall continue during her life. In consideration of such provision for her support she agreed, by one of the clauses of the contract of separation, at any time, upon request, to release her inchoate right of dower in any of the property of Mr. Whitney by joining with him in any conveyance or mortgage thereof, or in such other manner as would effectually release it. Such an agreement was a perfect consideration for Mr. Whitney's agreement to pay her $250 a month during her life, for a divorce in New York, when the action is brought by the wife, does not affect the wife's inchoate right of dower. Code Civ. Proc. N. Y. § 1759.

The defendant claims that the bond and mortgage in suit were given pursuant only to the directions in the decree of divorce, and relies upon those provisions in the bond and mortgage which recite that they are given pursuant to the provisions of the decree. But, in my opinion, the decree of divorce shows upon its face that the details in regard to the support of the wife were agreed upon by the consent of the parties. It makes the same provision for the wife's support as contained in the agreement of separation, but provides that the former mortgage is to be released and discharged, and a bond secured by another mortgage on other property is to be substituted in its place— an obvious matter of agreement between the parties. Moreover, the decree expressly provides that "except as hereinbefore specifically provided" (that is, the provision that one mortgage shall be substituted for the other) "this decree shall in no wise affect said agreement of May 13, 1889, between the parties to this action, which said agreement shall remain unimpaired and in full force, except the provision in the second subdivision thereof for an allowance of $3,000 annually to the plaintiff in this action," which had been introduced into the decree itself, and except as to the provision for the giving of the mortgage, for which a new one was being substituted. These provisions show upon their face that the parties had agreed upon certain modifications of the contract of separation. If they had not agreed upon such modifications, the court could not have inserted such provisions in the decree. The court, in a suit for divorce, cannot abrogate or change provisions in a previous valid contract of separation without the consent of the parties. Galusha v. Galusha, 116 N. Y. 638, 22 N. E. 1114, 6 L. R. A. 487, 15 Am. St. Rep. 453. No court can abrogate the provisions of any valid contract except in a direct suit for that purpose, based on facts alleged and proved sufficient to authorize a court of equity to annul a contract. Moreover, the evidence of the attorney for Mrs. Whitney in the divorce suit shows that there were such negotiations between the respective counsel for the husband and wife, resulting in the arrangement of the details of the decree in reference to the support of Mrs. Whitney. The referee had decided in favor of an absolute divorce, and it was obvious that the court would grant a decree of absolute divorce. That being the situation, it was natural that the parties should get together, and, if possible, agree upon the provisions for the support of the wife. The defendant's counsel objected to the introduction of this testimony, and has argued strenu-

ously that no evidence can be given other than the decree itself in reference to its own construction. But the evidence offered does not tend to contradict or vary the decree; it simply tends to explain the circumstances under which it was prepared and entered, and to show that the various provisions made in reference to the support of Mrs. Whitney were made by the consent of the parties. I think such evidence is competent for that purpose, although, in my opinion, it was strictly unnecessary in this case, for it sufficiently appears on the face of the decree itself that the parties had consented to having the same provision made for the support of the wife in the decree as had previously been made in the agreement of separation, with the exception that, for the convenience of Mr. Whitney, the mortgage which he had given should be discharged, and a new mortgage given on other real estate to secure the payment of the alimony. In my opinion, therefore, the case of Wilson v. Hinman does not govern the decision of this case, and Mrs. Whitney's right to payment during her life was not affected by the death of Mr. Whitney, and the mortgage in suit is valid security for the amount due under it.

The complainant claims that, default having been made in the payment of the monthly installments for more than 10 days, and the trustee having elected to declare the whole principal secured by the mortgage to be due, in accordance with its terms, there is now due under the mortgage a sum equal to what she would receive during the term of the probable continuance of her life, computed by the Northampton tables, after any monthly payments to her ceased. I think that this claim is correct.

The complainant also claims the right to recover the difference between the amounts actually paid her, during the period in which a diminished amount was paid her monthly, and $250 a month, on the ground that the agreement of separation and the decree of divorce having provided that $250 a month should be paid to a trustee for her benefit, and no trustee having been a party to the agreements reducing the amount of such payments, made with Mr. Whitney and the Whitney Elevator Company, the original provisions of the separation agreement and the decree of divorce remain in full force. But there was no trustee living at the time those agreements were made. Ashley, the first trustee, died in 1897. The payments of $250 a month were made to Mrs. Whitney until June 1, 1898. No trustee was subsequently appointed in the place of Ashley until October, 1909, after all payments had ceased. All the parties dealt with Mrs. Whitney as the substantial beneficiary, and by the terms of each of the agreements made between Mr. and Mrs. Whitney and the Whitney Elevator Company, it was recited that Mr. Whitney was unable to continue to pay the sum of $250 a month, and Mrs. Whitney agreed, in consideration of the agreement by the Whitney Elevator Company to pay $166 monthly, to accept it in full satisfaction. The Whitney Elevator Company did not assume the mortgage on the purchase of the property covered by it, and was under no legal obligation to pay to Mrs. Whitney the $250 a month, or any portion of it, and I think that its agreement to pay the $166 a month was sufficient consideration for an

agreement by M̦rs. Whitney to accept that in full settlement. There was strictly no necessity originally, under the New York married women's acts, to have a trustee to act for the wife under the separation agreement or the decree of divorce; and, the trustee having died before the reduced payments were made, I think it was perfectly competent for Mrs. Whitney, the beneficiary, to make a valid agreement for the reduction of the payments, in view of the admitted facts that her husband was unable to continue to pay the amounts agreed upon in full, and that the Whitney Elevator Company obligated itself to pay the smaller amount agreed on.

There càn be no doubt, in my opinion, of the right of Mrs. Whitney to bring this suit, after a request to the substituted trustee to bring it, and his refusal; the substituted trustee being joined as a party defendant in the action.

The Rochester Savings Bank holds two mortgages, one of which is a prior lien to the lien of the complainant on a portion of the premises mortgaged, and the other of which is a subsequent lien. Counsel for the bank asks to have the decree fix the amount due under its prior mortgage, to which the counsel for the complainant objects. In the face of such objection, I doubt the propriety of making any such adjudication in the decree in this case. This suit is not brought to determine the amount due under liens admittedly prior to the complainant's mortgage, but simply to foreclose subsequent liens.

Complainant's counsel has submitted some proposed findings of fact and conclusions of law, and requests the court to make such findings in the form submitted. I am glad to say that there is no such practice in equity cases in the federal courts.

My conclusion is that the complainant is entitled to a decree of foreclosure for an amount to be computed in accordance with this opinion. The form of the decree, if not consented to, should be settled on notice.