THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, PLAINTIFF, v. ROSE KRETZSCHMAR, ELIZABETH K. WINKLER AND EDNA MAE KRETZSCHMAR, DEFENDANTS.

ELIZABETH K. WINKLER, DEFENDANT AND CROSS-CLAIMANT-APPELLANT, AND EDNA MAE KRETZSCHMAR, DEFENDANT AND CROSS-CLAIMANT-RESPONDENT.

Argued February 27, 1956—Decided March 12, 1956.

*Mr. John E. Selser* argued the cause for the cross-claimant-appellant Elizabeth K. Winkler (*Messrs. Selser and Lucchi,* attorneys; *Mr. Benedict E. Lucchi,* on the brief).

*Mr. Walter P. Back* argued the cause for the cross-claimant-respondent Edna Mae Kretzschmar.

The opinion of the court was delivered by

VANDERBILT, C. J. This action was brought by the plaintiff life insurance company to require the three defendants to interplead and settle their conflicting claims to the moneys due from the plaintiff under five insurance policies on the life of Frederick H. Kretzschmar, now deceased. From the judgment of the Chancery Division of the Superior Court entered in favor of the defendant Edna Mae Kretzschmar, after cross-motions for judgment on the pleadings, the defendant Elizabeth K. Winkler appealed to the Appellate Division of the Superior Court and we certified the matter on our own motion while it was pending there.

The defendants are all related to the decedent in a variety of degrees. Elizabeth K. Winkler is his sister; Edna Mae Kretzschmar, who divorced him, was his second wife; Rose Kretzschmar was his third wife and is now his widow.

All the policies involved here were duly made payable to Edna Mae Kretzschmar, as named beneficiary, during the

period that she was the wife of the decedent. On four of the policies, totalling $11,500 in principal amount, the decedent changed the beneficiary from Edna Mae Kretzschmar to Elizabeth Winkler, his sister. On the remaining policy, in the amount of $10,000, he changed the beneficiary to Rose M. DeVuyst, who subsequently became his third wife. At the time of this change the decedent was still married to Edna Mae.

The chronology of events shows us that Frederick H. Kretzschmar and Edna Mae Kretzschmar were married in 1936 and three children were subsequently born of the union. In a suit for separate maintenance brought by Edna Mae against Frederick, a decree was entered in her favor which provided among other things that until otherwise ordered by the court Frederick was to pay the premiums and maintain the four policies of insurance on his life totalling $11,500, payable to Edna Mae and, in the event of her death, to the three children. Frederick retained possession of the policies, but the decree further ordered:

"That until the further order of the Court the defendant be, and he is hereby restrained and enjoined from changing any of the terms or conditions of said policies of insurance."

Among the other things provided in the decree, Frederick was ordered to transfer and convey to Edna Mae or her designee certain real property in the State of Florida and to transfer to her all of his interest in a certain bank account in that State and she in turn was ordered to execute and deliver a bond on which no interest was to be payable until September 1, 1957, secured by a mortgage on the premises in Florida. He was also ordered by that decree to conclude other property settlements, all of which we presume have been heretofore carried out. The decree dated October 6, 1947 bears the personal consent endorsements of both parties and of Frederick's counsel as follows:

"Having read the terms and conditions of the foregoing Decree and having received a full and complete explanation thereof we do

hereby consent to its signing and entry. Dated at Paterson, New Jersey, September 24th, 1947.

> (signed)  Edna May Kretzschmar
> Edna May Kretzschmar, Complainant

Signed in the presence of
(signed) Meyer W. Stein

> (signed)  Frederick H. Kretzschmar
> Frederick H. Kretzschmar, Defendant

(signed) Meyer W. Stein
We hereby consent to the signing and entry of the foregoing Decree. Dated at Paterson, New Jersey,
September 24, 1947

> (signed)  Doughty & Dwyer
> Doughty & Dwyer
> Solicitors for Defendant."

On March 19, 1951 Edna Mae obtained a judgment *nisi* for an absolute divorce from Frederick on her counterclaim to his action against her for divorce. Final judgment of divorce was entered on July 12, 1951. All of the changes in beneficiaries on the four policies first mentioned were made in April and May 1951, prior to the entry of the final judgment of divorce. The change on the fifth policy, not mentioned by the decree, had been effected in September, 1949.

Rose Kretzschmar, the third wife, and Elizabeth K. Winkler, the decedent's sister, urged that the final judgment of divorce vacated the decree for separate maintenance of October 3, 1947, and that the restraint and the provisions thereof were a nullity and unenforceable by virtue of the subsequent divorce judgment.

The trial judge, who incidentally was the same advisory master who advised both the decree of separate maintenance and the terms of the decree *nisi* for absolute divorce here involved,. held that Edna Mae by the decree of October 6, 1947 obtained a vested interest in the four policies totalling $11,500 that could not be destroyed without her consent or without a further order of the court permitting Frederick to change her interest. He pointed out that nowhere in the divorce proceedings was there any manner of agreement as to alimony or maintenance to be paid by Frederick and as a matter of fact the final determination on this score was measured by the court itself and provided for in the decree

*nisi* along with the adjudication of the issue of divorce, the wife's counsel fee and the custody of the children. He found that by his voluntary action in consenting to the terms of the separate maintenance order Frederick made himself the agent and trustee for Edna Mae as to the four policies and could do nothing to destroy her interest therein without her consent or without an order of the court, neither of which was obtained.

The judgment entered was in favor of Edna Mae Kretzschmar as to the four policies totalling $11,500, and since the $10,000 policy changed in favor of his third wife was not affected by any decree of the court, judgment was rendered in her favor as to it. The sister appeals.

The crucial issue here is whether the divorce decree supercedes and nullifies the provisions of the prior decree of separate maintenance.

The appellant relies upon *Isserman v. Isserman,* 11 *N. J.* 106, 108 (1952), as authority for the general proposition that when a decree of divorce is entered terminating the relationship of husband and wife, any prior separate maintenance decree based on such relationship must fall; that the only time when a separate maintenance decree will survive a subsequent judgment of divorce is when no mention is made of support in the divorce decree. She urges that since the divorce decree here made provision for the support and maintenance of the wife and children, the exception does not apply and the prior decree is a nullity.

In the *Isserman* case, *supra,* the wife secured a decree of separate maintenance in her favor in this State. Thereafter the husband instituted proceedings for divorce in a foreign state in which the wife appeared, pleaded, cross-claimed and sought alimony and actively participated in the foreign proceeding. The foreign decree entered against her dissolved the marriage and approved an agreement between the parties providing for the settlement of "all the rights of property of the parties and the right of the appellant (the wife) to alimony, separate support and maintenance, past, present and future." The decree also provided that the separate mainte-

nance decree of our former Court of Chancery was nullified. While we questioned the right of the foreign court to adjudicate with respect to a decree of a court of this State, it appears nevertheless as a clear expression of the intent and purpose of the parties.

Here, not only are there no such consensual aspects to the final judgment of divorce, but we find totally lacking any indication that the other provisions of the prior separate maintenance decree not definitely treated in the divorce decree were not intended to be continued. Moreover, we cannot overlook the fact that here the separate maintenance decree was entered upon the consent of the husband and his counsel after a complete explanation of the terms thereof and we must assume an adequate understanding of its provisions.

In the *Isserman* case, *supra,* we said at *page* 114, that:

> "Our statute on maintenance is applicable only where the relationship of husband and wife exists, and a decree of absolute divorce dissolves such relationship and thereby terminates the wife's right to thereafter sue or enforce an order for separate maintenance and support. *Peff v. Peff,* 2 *N. J.* 513, 525 (1949). This is subject to the exception that where there is a failure to apply in the divorce proceeding for alimony in substitution for the support order granted in the maintenance proceeding, this is merely a procedural defect and the decree of divorce alone does not merge or vacate a prior order for separate maintenance. *Bowers v. Bowers,* 132 *N. J. Eq.* 481 (*E. & A.* 1942) ; *Schimek v. Schimek,* 109 *N. J. Eq.* 395 (*Ch.* 1931).
>
> \*      \*      \*      \*      \*      \*      \*      \*
>
> There is a distinction between support and maintenance or alimony *pendente lite,* and alimony allowed in a final judgment for divorce *a vinculo.* The former is the duty of support owed by the husband to the wife during such time as they were legally separated during the existence of the marital relationship. Alimony in its technical sense in this State is purely statutory and is an expression of the continuing duty of support which a husband owes his wife, and of which he is not permitted to absolve himself by his own misconduct, although that misconduct brings about the dissolution of the marriage. *Lynde v. Lynde,* 64 *N. J. Eq.* 736, at *page* 751 (*E. & A.* 1902)."

But we were there speaking only of the duty to support which is based upon the marital state and were not in any

way dealing with the other elements of a property settlement incident to a severance of the marital relationship. In this connection can it be said that the wife or her successors and assigns would not be required to satisfy the obligation to pay the principal or the interest after September 1, 1957 on the bond and mortgage presumably given under the terms of that prior decree? Is not that obligation akin to the obligation undertaken by the husband—completed in some respects, but executory in others—to secure and maintain the insurance for the benefit of the innocent wife and children? Could the husband take back, with impunity, all that he had given under the terms of the maintenance order? If it is a nullity with respect to the elements of the property settlement wherein lies the basis to prevent such action? No claim is made by the appellant that the transfer of other property pursuant to the terms of the separate maintenance decree were in any way affected. She attacks only the insurance policies, not only because in them lies her principal interest, but we think also because a broader attack would expose the inherent weaknesses of her position with respect to every aspect of the property settlement.

If the general rule lately set forth in the *Isserman* case, *supra,* renders a decree of separate maintenance a nullity where provision is made for alimony in the subsequent divorce judgment, then too, the exception to that rule that permits recovery to be had on the separate maintenance order where no alimony provision is made in the divorce decree, must furnish a similar basis for holding that if the property settlement provisions in the separate maintenance decree are not dealt with in the subsequent divorce judgment in some definite or positive fashion or are not excluded or modified by inconsistent subsequent provisions in the divorce judgment, there is no substantive change in the rights of the parties but merely, what is termed in the *Isserman* case, "a defect in procedure." Such rights must be viewed as continuing unless dealt with in the judgment of divorce to the contrary.

The duty to support and protect the innocent wife and children in a manner as near commensurate with the existence of a normal marital relation as possible, exists after the divorce of the husband for his own misconduct as much as it does during the marital state under the separate maintenance order. Consequently it cannot be said that attributing permanence to the separate maintenance order under the circumstances present in this case does any violence to the husband's obligation, *Bonanno v. Bonanno,* 4 *N. J.* 268 (1950); *Testut v. Testut,* 34 *N. J. Super.* 95 (*App. Div.* 1955); *Turi v. Turi,* 34 *N. J. Super.* 313 (*App. Div.* 1955).

We have considered the other points raised by the appellant and find them without merit in view of the conclusion reached on the critical issue in this case.

The judgment is accordingly affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For reversal*—None.