55 N.J. Super. 273 (1959)
150 A.2d 688
HILDA FLICKER, PLAINTIFF-APPELLANT,
v.
GENEVIEVE F. CHENITZ AND DAVID J. FLICKER, EXECUTORS OF THE ESTATE OF SOL (J.) FLICKER, DECEASED, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 1959.
Decided April 21, 1959.
*275 Before Judges GOLDMANN, FREUND and HANEMAN.
*276 Mr. Milton M. Unger argued the cause for plaintiff-appellant (Messrs Milton M. and Adrian M. Unger, attorneys; Mr. Sidney S. Jaffe, on the brief).
Mr. Alfred C. Clapp argued the cause for defendants-respondents (Messrs. Clapp and Kean, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
This is the question: is the provision in a property settlement agreement between husband and wife, made during the pendency of a divorce proceeding, conditioned upon approval and duly approved by the court and embodied in the divorce decree in favor of the wife, whereby the husband agreed to pay his wife the sum of $140 per week "during the lifetime of the wife * * * in lieu of all support, alimony and maintenance for" herself and their two minor children, enforceable against the husband's estate upon his death, or did this obligation thereupon terminate? According to counsel and the trial court, the precise question has never before been decided in this State.

I.
The basic facts are not in dispute. The plaintiff, Hilda Flicker, and Sol J. Flicker were married to each other on August 6, 1936, and two children, Jon and Andrew, were born of the marriage. On September 17, 1946 plaintiff instituted divorce proceedings based upon her husband's desertion. On December 30, 1946, while the divorce suit was pending in the then Court of Chancery of this State, they entered into an agreement which is the subject of this litigation. It recited that they desired to
"settle, adjust and compromise all questions concerning any and all claims which either has asserted or may have against the other, and to settle their property rights, and agree on terms for the maintenance and support of the wife and the custody of said children as well, as well as all matters and questions effecting (sic) their marital and other legal relations, * * *." *277 Paragraphs 2 to 7, inclusive, and paragraph 11 pertain to conveyances and releases of interests in various parcels of real estate, to the assumption of responsibilities in connection therewith, and to the division of personal property. Other parts of the agreement relate to custody of the children (then aged eight and five), rights of visitation, and other details with which we are not concerned. The pertinent provisions around which this litigation revolves are these:
"1. Commencing with the date of the execution of this agreement, and during the lifetime of the wife, the husband shall pay to the wife, in lieu of all support, alimony and maintenance for the wife and the said children, the sum of One Hundred Forty Dollars ($140.00) per week * * *."
"15. This agreement shall be void and of no effect unless it be approved as suitable, fair and adequate by a decree of the Court of Chancery of New Jersey in the aforementioned pending suit, and both parties hereto consent to an order or decree of approval by the court. Both parties intend that this agreement shall survive any decree for divorce and be binding and conclusive on the parties."
"17. * * * it being the intention of the parties that henceforth there shall be between them only such rights and obligations as are herein provided for." (Italics supplied)
The decree nisi entered on January 17, 1947 ordered the payment of $140 per week for support and maintenance, and the final decree was entered on April 18, 1947. With specific reference to the agreement, the decree nisi recited:
"* * * and the court having considered the same, the position and circumstances of the parties, and being satisfied that the proposed agreement is fair, adequate and equitable, and that its provisions will be of greater benefit and advantage to the petitioner than would a provision by way of alimony, and are suitable and adequate for her support and maintenance, it is further ORDERED, ADJUDGED AND DECREED that the said agreement be and the same is hereby approved, subject, however, to the continuing jurisdiction of this court to make subsequent award of alimony to petitioner in case of her necessity."
Both parties performed the terms of the agreement, and the husband paid the stipulated weekly sum until his death on March 29, 1958. His will was duly probated. The defendants, executors thereunder, have refused plaintiff's demand *278 for continuance of the weekly payments, asserting that the obligation terminated upon the death of the testator. The will made no provision for the plaintiff or the children, who are still minors in the plaintiff's custody and said to be partly physically disabled. While evidence of their disability does not appear in the record, the fact is stated in plaintiff's brief and not denied in defendants'.
Plaintiff brought this suit in the Chancery Division for construction of the agreement. She seeks a judgment for the moneys due thereunder from the date of her former husband's death, as well as a judicial determination that the assumed obligation will bind the estate for the duration of her lifetime. The action is grounded upon the voluntary, court-approved agreement between plaintiff and her former husband. Her position is that the provision for the weekly payment did not merge into the decree, but that it subsists as an independent obligation during her lifetime and is enforceable against her former husband's estate. Defendants in their answer assert that the agreement merged into the decree nisi, thus becoming subject to the incidents of alimony, and that, therefore, the obligation terminated upon the death of the testator.
Both parties moved for summary judgment in their favor. The defendants also moved for modification of the decree nisi so as to provide expressly that the obligation terminated upon Dr. Flicker's death. The court sustained the defendants' contentions and further held that
"* * * the essence of the agreement was the discharge of the marital obligation to pay alimony to which the presumably equal division of the jointly owned assets was adjectival. In these circumstances, the agreement is unenforceable in this State whether or not it be found to have merged in the decree nisi."
While it therefore became
"unnecessary to pass upon the question of whether or not the document reflects a mutual intention of the parties that the obligation to provide support should survive the husband," *279 the trial judge concluded
"that evidence of such intention does not appear in the agreement either expressly or by necessary implication."
Accordingly, plaintiff's motion for summary judgment was denied, and defendants' motion for summary judgment in their favor was granted. Defendants' motion for modification of the decree nisi was denied because "the relief sought would serve no useful purpose." From the judgment entered dismissing her complaint with prejudice, plaintiff appeals.

II.
Before addressing ourselves to the central problems concerning the enforceability of the agreement and the applicability of the rule that alimony terminates with the husband's death, we deem it appropriate first to dispose of the defendants' point that the agreement does not expressly or by necessary implication provide that payments were to continue after Dr. Flicker's death. As noted, the trial judge found it unnecessary to decide this question, but he nonetheless shared the view that the document reflects no intention to bind the husband's estate. We do not agree.
The emphasis of defendants' argument is that the provision in the instrument that "the husband shall pay * * * during the lifetime of the wife" does not of itself sufficiently bespeak an intention that the obligation would survive his death. But there is no provision in the agreement that would require payments to cease upon Dr. Flicker's death. There is nothing in the agreement to negative the existence of an intent that "during the lifetime of the wife" should mean what it says  as long as she lives and not a shorter period. Significantly, the agreement does not say payments will be forthcoming "during the joint lives of the parties." And while there is nothing in the agreement specifically reciting that it is binding on "his executors," there is a *280 presumption of law, in the absence of express words, that parties to a contract intend to bind not only themselves but their legal representatives as well. See, e.g., Kernochan v. Murray, 111 N.Y. 306, 18 N.E. 868, 2 L.R.A. 183 (Ct. App. 1888); Barnes v. Klug, 129 App. Div. 192, 113 N.Y.S. 325, 328 (1st Dept. 1908); 17 C.J.S. Contracts § 520, p. 1144. Although that presumption is not operative in the construction of contracts which are of such a nature as to admit only of a personal performance, many of the cases discussed infra and others have held, expressly or impliedly, that the husband's promise to pay support to his wife for a term such as "during her life" will charge his estate without an explicit provision to that effect. McCubbin v. Patterson, 16 Md. 179 (Ct. App. 1860); Barnes v. Klug, supra; Dickey v. Dickey, 154 Md. 675, 141 A. 387, 58 A.L.R. 634 (Ct. App. 1928); Farrington v. Boston Safe Deposit & Trust Co., 280 Mass. 121, 181 N.E. 779 (Sup. Jud. Ct. 1932) (language was in the decree); Jennings v. First Nat'l. Bank, 116 W. Va. 409, 180 S.E. 772, 100 A.L.R. 404 (Sup. Ct. App. 1935); In re Wise's Estate, 99 Colo. 562, 64 P.2d 594 (Sup. Ct. 1937) (contract held not personal but in furtherance of his legal and moral duty); In re Kuchenbecker's Estate, 4 Ill. App.2d 314, 124 N.E.2d 52 (App. Ct. 1955); Lindey, Separation Agreements (1937), § 26, p. 434; 1 Nelson, Divorce and Annulment (2d ed. 1945), § 13.35, p. 516; 42 C.J.S. Husband and Wife § 603, p. 189. Contra, Parsons v. Parsons' Estate, 70 Colo. 333, 201 P. 559, 18 A.L.R. 1038 (Sup. Ct. 1921). Compare Victory v. Union County Trust Co., 4 N.J. Misc. 908, 134 A. 883 (Sup. Ct. 1926).
In construing the intention of the parties as expressed in the language of the agreement, it should also be noted that the instrument mentions other eventualities, such as the death of either of the children, as the occasion for a proportionate reduction in the weekly amount payable. It is a reasonable assumption that the parties also contemplated the husband's predeceasing the wife. That they did not *281 expressly provide for this contingency evinces an intention that such occurrence would not, in similar fashion, affect the payment provisions. Omitted restrictions will not be implied in otherwise clear and general promises. 3 Williston, Contracts (rev. ed. 1936), § 610, pp. 1753-54. Cf. 3 Corbin, Contracts (1951), § 564, p. 172.
Even if we were to look to the actual intention of the parties, as distinguished from the intention that can be ascertained from the four corners of the document (both parties apparently concede the propriety of such an investigation under these circumstances), the totality of the evidence of the surrounding circumstances, to the extent such evidence has been made known to the court, supports the conclusion that the payment provisions were intended to survive the husband's death. On behalf of the executors it is asserted that Dr. Flicker could not have intended to have "payments of so large a sum, as $7,280 a year, continue after his death so as perhaps to swallow up his estate after his income from his profession should cease." But there is no basis in the evidence for the suggested inference that the estate will be rapidly depleted if plaintiff prevails. It may well be that the estate includes income-producing capital assets the annual yield of which would offset the obligation to plaintiff. Moreover, any inference in favor of defendants' construction that the decedent did not wish to charge his estate with an immutable amount is weakened by the circumstance, presumably known to the husband, that his executors could (and can  see below) apply for an order modifying the payment provisions.
On the other hand, whatever doubt may remain as to what the parties intended is completely dispelled when it is considered that Dr. Flicker, in a will allegedly made soon after the execution of the agreement in question, made no provision for his wife. Moreover, the will in force at the time of his death disinherited the minor children as well as plaintiff. Is it not a reasonable conclusion that the decedent made this disposition of his estate under the assumption *282 and with the intention that his ex-wife and children were to continue to receive $140 weekly under the 1946 agreement in the event of his death? Compare Cooke v. Cooke, 2 A.D.2d 128, 154 N.Y.S.2d 757 (2d Dept. 1956), where the court, influenced by the circumstance that the husband's will made a substantial allowance for the wife's support, reached a contrary conclusion. We find untenable the argument made by defendants that Dr. Flicker's failure to provide for plaintiff in either will is persuasive evidence that he did not intend his family to share in his estate under any instrument, will or contract.
We are therefore entirely satisfied that the agreement sought to be enforced is one which the parties themselves intended to be enforceable under the present circumstances.

III.
One further preliminary matter should be settled at this point lest confusion eventuate. By this action plaintiff seeks specific performance of the property settlement agreement. She rests her case upon the agreement alone, not upon the provisions of the decree nisi. As stated in plaintiff's brief,
"Plaintiff's action is grounded upon the agreement which, because it did not merge into the said decree, subsists as an independent, enforceable obligation against the husband's estate. If the instant suit were predicated exclusively on the alimony provision contained in the decree, without any reference to the agreement, it might be conceded that the wife would have no case because the obligation to pay alimony provided for in a divorce decree terminates upon the death of the husband."
Plaintiff might have based her present action on the provision in the decree nisi approving the agreement on the theory that it lent to the agreement the force of a judgment. See West Jersey Title and Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 150 (1958). This contention has not been advanced, and we do not purport to pass on it. For like reason, the propriety of the trial judge's ruling that the decree nisi need not be modified is not in issue.

*283 IV.
The precise question posed at the beginning of this opinion has been considered in many jurisdictions. It has been generally held that while the obligation to pay alimony in its technical sense ordinarily terminates upon the death of the husband, yet, if he expressly undertakes to pay a stipulated sum at regular intervals for the support of his wife during her life in lieu of alimony or support and the agreement is approved by the court and embodied in the divorce decree, the provision is enforceable against the estate of the former husband upon his death. Such a provision in a property settlement agreement is construed as a voluntary agreement in the nature of a life annuity payable in periodic installments and not as alimony in its technical import, and if the husband predeceases his wife, his estate may be held legally responsible for the continuance of the payments for the remainder of the wife's life. In Annotation, 147 A.L.R. 708, 709 (1943), it is said, without reference to any New Jersey authority, that this holding obtains "without exception."
Courts have arrived at this result under varying rationales. Some construe the agreement as valid and subsisting; the expressed or presumed intention of the parties to charge the husband's estate is given effect accordingly. Stratton v. Stratton, 77 Me. 373 (Sup. Jud. Ct. 1885); Wilson v. Hinman, 182 N.Y. 408, 75 N.E. 236, 2 L.R.A., N.S., 232 (Ct. App. 1905); Barnes v. Klug, supra; Whitney v. Whitney Elevator & Warehouse Co., 180 F. 187 (Cir. Ct. W.D.N.Y.), affirmed 183 F. 678 (2 Cir. 1910), certiorari denied 219 U.S. 588, 31 S.Ct. 472, 55 L.Ed. 348 (1911); Dickey v. Dickey, supra; Jennings v. First Nat'l. Bank, supra; Daggett v. Commissioner of Internal Revenue, 128 F.2d 568 (9 Cir. 1942), certiorari denied 317 U.S. 673, 63 S.Ct. 78, 87 L.Ed. 540 (1942); International Trust Co. v. Liebhardt, 111 Colo. 208, 139 P.2d 264, 147 A.L.R. 700 (Sup. Ct. 1943); In re Grimley's Estate, 200 Misc. 901, *284 107 N.Y.S.2d 129 (Surr. Ct. 1951); Foster v. Foster, 195 Va. 102, 77 S.E.2d 471, 39 A.L.R.2d 1397 (Sup. Ct. App. 1953); In re Scott's Estate, 394 Pa. 39, 145 A.2d 669 (Sup. Ct. 1958); In re Traver's Estate, 2 Wis.2d 509, 87 N.W.2d 269 (Sup. Ct. 1958). See also 6 Williston, op. cit., supra, § 1742, p. 4931, n. 9; 17A Am. Jur., Divorce and Separation, § 910, p. 96.
Other courts regard the agreement as merged into the decree, but the provision for periodic payments in the decree is held to survive the husband's death. Pryor v. Pryor, 88 Ark. 302, 114 S.W. 700 (1908); In re Kuchenbecker's Estate, supra.
The third approach, the Massachusetts doctrine, is expounded in Farrington v. Boston Safe Deposit & Trust Co., 280 Mass. 121, 181 N.E. 779 (Sup. Jud. Ct. 1932), where the court held the husband's estate bound by the decree, irrespective of whether or not it was based upon an agreement of the parties. It was considered that the court itself had the power to order that the payment of alimony should extend beyond the husband's life, and that a decree providing for that effect (again, not expressly but by construction of the decree) would be enforced despite the general, prevailing rule that alimony ceases with his death.
Although it has been generally assumed in New Jersey that alimony terminates with the death of the husband (Macfadden v. Macfadden, infra, 46 N.J. Super., at page 247; Herman v. Herman, 17 N.J. Misc. 127, 129, 5 A.2d 768 (Ch. 1939); Herr, Marriage, Divorce and Separation, 10 N.J. Practice (1950), § 273), we have found no case which construes N.J.S. 2A:34-23 to deny the Chancery Division the power to charge the husband's estate with the payment of alimony in an appropriate case. But cf. Modell v. Modell, 23 N.J. Super. 60 (App. Div. 1952), where the trial court was denied the power to order the husband to create a fund, by way of insurance policies on his life, for the support of the wife after his death. The husband's agreement to carry insurance payable to the wife is enforceable, *285 however, where the obligation is not deemed a quid pro quo for the duty of support. See Raymond v. Raymond, 39 N.J. Super. 24, 30, 31 (Ch. Div. 1956). Cf. Equitable Life Assurance Society of the United States v. Kretzschmar, 21 N.J. 129 (1956); Malkan, "Domestic Relations," 11 Rutgers L. Rev. 112, 128-29 (1956). See, generally, Annotation, "Death of Husband As Affecting Alimony," 39 A.L.R.2d 1406 (1955).

V.
Turning to the decisional law of New Jersey, we find no case adopting or rejecting the rule prevailing elsewhere that a husband may, by a voluntary, court-approved contract, bind his estate to make periodic payments for the support of the wife. See Herr, op. cit., supra, §§ 482, 490. Yet, in a recent Pennsylvania case, In re Scott's Estate, 394 Pa. 39, 145 A.2d 669 (1958), the Supreme Court of that state held that, under New Jersey law, an agreement (to all intents and purposes equivalent to the agreement in the case at bar) would be binding on the husband's estate in New Jersey, and hence would be enforced in Pennsylvania.
The Scott court found persuasive to its result the case of Macfadden v. Macfadden, 46 N.J. Super. 242 (Ch. Div. 1957), affirmed 49 N.J. Super. 356 (App. Div. 1958), certification denied 27 N.J. 155 (1958). There the wife brought an action against, inter alia, the executors of her deceased ex-husband's estate to enforce an agreement whereby the husband had promised her the use of a house during her lifetime. The Chancery Division granted specific performance. The Appellate Division affirmed, the opinion reciting that: "The agreement here sued upon is not one solely for alimony," and that the husband's promise would be enforced as part of a property settlement. 49 N.J. Super., at page 363. Standing alone, the quoted statement could be construed as implying that a provision which partakes of the nature of a support payment or alimony *286 will be enforced when it is included within a more comprehensive property settlement (as in Scott and in the case sub judice). However, when read with prior adjudications refusing to enforce support agreements where the provision was part of a more inclusive agreement (Lum v. Lum, 140 N.J. Eq. 137 (E. & A. 1947), reversing 138 N.J. Eq. 198 (Ch. 1946); Harrington v. Harrington, 142 N.J. Eq. 684 (E. & A. 1948), reversing 141 N.J. Eq. 456 (Ch. 1948)), the appellate opinion in Macfadden cannot be regarded as authoritative in the present context. The holding there is better justified on the basis of the distinction between an agreement to make periodic payments and the guaranty of a residence. Macfadden held enforceable only the latter. Thus it is that we find no case in this jurisdiction of controlling precedential avail.

VI.
Despite the overwhelming weight of authority from other states, it is urged on behalf of the executors that the agreement may not be enforced in this jurisdiction for three distinct reasons. First, defendants say that a judgment for the plaintiff in this case will constitute a departure, at least in principle, from an unwavering line of precedent established by courts of last resort in this State to the effect that a support agreement (i.e., one which in effect is an agreement for alimony in its technical import, as opposed to a property settlement) cannot be specifically enforced. The established doctrine here is that an agreement between husband and wife pertaining to support is unenforceable because it is the court that has the statutory power in a matrimonial action to award alimony and the continuing power to modify the award, as the circumstances may require. The obligation of support is held to arise from the existing or pre-existing marital status and is not controlled by the rules of specific performance of contracts. Such an agreement, however, is evidential in the matrimonial proceeding of the sum which the parties deem appropriate for the *287 support of the wife, and the court may recognize the terms of the agreement as a basis for its award. Peff v. Peff, 2 N.J. 513, 526 (1949); Apfelbaum v. Apfelbaum, 111 N.J. Eq. 529, 84 A.L.R. 298 (E. & A. 1932); Phillips v. Phillips, 119 N.J. Eq. 462 (E. & A. 1936); Richman v. Richman, 129 N.J. Eq. 114 (E. & A. 1940); Applegate v. Applegate, 135 N.J. Eq. 29, 154 A.L.R. 317 (E. & A. 1944); Lum v. Lum, supra; Harrington v. Harrington, supra. And see Braunstein v. Guarantee Trust Co., 114 N.J. Eq. 181 (E. & A. 1933), where the husband died prior to approval of the agreement by the court. But see a line of earlier cases collected in Annotation, 154 A.L.R. 323, 341 et seq. (1945).
But plaintiff contends that the rationale of these cases rests on the availability of the divorce statute as an exclusive ground for relief, and that where, as here, alimony provisions of the divorce statute cannot be availed of because the husband is dead, the support agreement may be enforced. Defendants answer that statutory relief under the divorce act  the traditional reason advanced for the lack of subject matter jurisdiction in the equity courts to enforce support agreements  was also unavailable in Lum v. Lum, supra, where the wife had been guilty of misconduct, and in Harrington v. Harrington, supra, where the wife had remarried. It is therefore said that, notwithstanding that New Jersey is an apparent minority of one in refusing specific performance of separation agreements calling for periodic payments to the wife (see 17A Am. Jur., Divorce and Separation, § 919, p. 105; Annotations, 154 A.L.R. 323 (1945), 44 A.L.R.2d 1091, 1093, 1097 (1955)), plaintiff's proffered distinction has not been accepted under the cases.
In our judgment, however, plaintiff's position is well taken. The decisions holding support agreements unenforceable have been made in situations quite different from the instant case. There is, it seems to us, an obvious distinction between a case where the wife has remarried and is presumably being *288 cared for, or one in which her misconduct has deprived her of her right to support, and one in which her ex-husband has died without providing for her except in the agreement itself  if from no other vantage point than that of public policy. Indeed, it is noteworthy that the policy in favor of the proper maintenance of the wife by a husband who has been guilty of a marital offense has found its most sedulous application in cases where the husband asserted that his duty of support was discharged by his having duly performed under a settlement agreement. Thus, in Walker v. Walker, 118 N.J. Eq. 309 (E. & A. 1935), and in Parmly v. Parmly, 125 N.J. Eq. 545 (E. & A. 1939), it was held that the husband's lump-sum payment to the wife  intended as full settlement of all support obligations  did not thereafter preclude her from obtaining added payments upon a showing of strained circumstances. The wife is not permitted to "bargain away chancery's jurisdiction to provide for and regulate the quantum of alimony." 125 N.J. Eq., at page 548. These decisions reflect the fundamental principle that a wife is to be properly maintained by an errant husband, and if the enforcement of a judicially-approved agreement is the only avenue by which to give effect to this policy, the courts of chancery are not to be regarded as so jealous of their own jurisdiction as to deny countenance to effectuation of the agreement.
It could be argued that making such a distinction violates the principle of consistency of adjudication, that the enforceability of a document should not depend upon the time the court is called upon to construe it, and that an agreement unenforceable during the joint lives of the parties cannot become enforceable upon the husband's death. Cf. Prime v. Prime, 172 Or. 34, 139 P.2d 550 (Sup. Ct. 1943). To this we say that the cases refusing specific performance of such agreements did not proceed upon the logic that they were absolutely void in equity, as they were in law. Despite some occasional, rather broad language to the contrary (see, e.g., Polyckronos v. Polyckronos, 17 N.J. Misc. *289 250, 256, 259, 8 A.2d 265 (Ch. 1939)), the holdings of a vast majority of the cases are more appropriately explained on the basis that the remedy afforded under the statute merely suspended the wife's right to enforce an agreement otherwise valid, if fair and equitable to the parties in all respects. Cf. Halstead v. Halstead, 74 N.J. Eq. 596 (Ch. 1908); Cohen v. Cohen, 121 N.J. Eq. 299, 322-23 (Ch. 1936); Raymond v. Raymond, supra, 39 N.J. Super., at page 30. Thus, irrespective of the point in time when the instrument is before the courts, it will be construed as enforceable in circumstances where the wife has obtained a decree of divorce in her favor, she is disqualified from statutory relief, and the reason for such disqualification is not of her own doing.

VII.
Second, it is argued that the support agreement merged into the decree nisi with the result that plaintiff was left with no rights under the agreement that can be enforced. It is said that, upon the entry of the divorce decree, the husband's only obligation to make payments to his wife was that which arose from the decree itself. Since this constitutes an alimony obligation in the strict statutory sense, the obligation died with the husband. Defendants rely on Corbin v. Mathews, 129 N.J. Eq. 549 (E. & A. 1941), where it was said:
"We find that the contract between complainant and defendant became engrafted into the divorce decree to the extent that it took on the aspect of and became subject to the incidents of alimony. The agreement, in our opinion, merged with the decree for divorce, and the obligation to make the weekly payments therefore became a court order to pay alimony. The fact that the court took over the terms of the contract did not impair the power of the court to alter such provisions to accord with the equity of unfolding circumstance." 129 N.J. Eq., at page 554.
The chief difficulty with this reasoning is that "merger" is merely a statement of a conclusion that has already been *290 reached. It does not aid analysis. If it means only that a pre-existing settlement agreement can always be judicially modified, the use of the word is harmless. Thus the "merger" concept has been rightly employed by our courts to justify continuing jurisdiction to mold decrees incorporating agreements to conform with shifting circumstances. See, e.g., Rufner v. Rufner, 131 N.J. Eq. 193, 196 (E. & A. 1942); Schluter v. Schluter, 23 N.J. Super. 409, 416 (App. Div. 1952), certification denied 11 N.J. 583 (1953); Schluter v. Schluter, 17 N.J. Super. 496, 503 (Ch. Div. 1951); Annotation, 166 A.L.R. 675, 679 (1947). But to reason that the agreement becomes "merged" in the decree and that the obligation thus takes on all of the incidents of alimony, including termination thereof, is hardly called for by the policy in favor of reposing in the court the jurisdiction to grant modification. In International Trust Co. v. Liebhardt, supra [111 Colo. 208, 139 P.2d 267], the Colorado court disposed of the "merger" argument in this fashion:
"This contract was approved and adopted by the court as fair and reasonable. We do not believe that the action of the court worked some sudden transformation  similar to the alchemists theory of transmutation of elements  and changed the agreement into a decree for the payment of alimony. Alimony is by its very nature subject to change with changing circumstances. The contract provided for the payment of an unchanging monthly amount and the order of the court was that the husband make the payments as provided in the contract.

* * * * * * * *
We are therefore of the opinion that the monthly payments provided in the contract to be paid to Edith Liebhardt for the remainder of her life, unless she subsequently remarried, did not constitute a provision for alimony and did not become such when the court adopted and incorporated the contract in its decree."
For a discussion and critique of the merger doctrine in this context, see Note, 63 Harv. L. Rev. 337, 338-39 (1949). See also Harris v. Commissioner, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111 (1950) (gift tax context); Lindey, op. cit., supra, § 23, p. 389.
*291 Moreover, it is commonly said that merger depends upon the intention of the parties. 17A Am. Jur., Divorce and Separation, § 907, p. 94. Cf. Lawrence v. Tandy & Allen, 14 N.J. 1, 9 (1953); Newton v. Newton, 43 N.J. Super. 442, 444 (Ch. Div. 1957). That intention was unequivocally expressed in the agreement here. Thus:
"Both parties intend that this agreement shall survive any decree for divorce and be binding and conclusive on the parties."
Insofar as Corbin v. Mathews, supra, involves a situation where the agreement was the product of the wife's fraudulent concealment of her plans to remarry, the case is distinguishable on its facts. The court's discussion of the merger concept was not necessary to the decision, and, more importantly, was influenced by the rule prohibiting specific performance, which as we have seen is inapplicable here.
In West Jersey Title and Guaranty Co. v. Industrial Trust Co., supra, our Supreme Court was faced with another aspect of the property settlement agreement the support provisions of which were construed as specifically enforceable in Pennsylvania in the case of In re Scott, supra. The litigation in this State concerned whether or not Scott's ex-wife could enforce against his executors that provision of an oral agreement whereby the parties were to join in a deed conveying certain premises to themselves as joint tenants with a right in the wife to exclusive possession during her life. Through inadvertence the stipulated conveyance was never made, and the question was whether the wife could prevail on the basis of the decree nisi which had embodied the terms of the oral agreement. The court said that the property settlement "to all intents and purposes merged in the decree itself," (27 N.J., at page 149), and held that "the agreement thus judicially established may be specifically enforced in equity." Id., at page 150. The court did not say that when the agreement merged into the decree the wife was left with no rights under the agreement; it employed the merger principle rather to show *292 that the wife could proceed on the basis that the decree lent to the oral agreement the force of a judgment. We do not therefore regard the case as sustaining defendants' position that merger operates to defeat rights under an otherwise enforceable agreement.
The foregoing expression of views as to the applicability of the "merger" principle is, of course, to be considered in the light of the problem presently before us. We hold only that the agreement is not infused into the decree to the extent that the provision for periodic payments is converted into a direction for the payment of alimony and therefore that the obligation assumed does not terminate with the death of the husband as would alimony. We are not to be understood as adopting in toto the rationale of those cases which hold that the periodic payments are unlike alimony because they are contractual in nature, provide for the payment of an unchanging amount, and are therefore not subject to modification by courts whose statutory jurisdiction over alimony and support may be limited to the revision of court decrees. See, e.g., International Trust v. Liebhardt, supra, indicating that the executor of a deceased husband may not in similar circumstances apply for modification; Annotations, 58 A.L.R. 639 (1929); 109 A.L.R. 1068 (1937); 166 A.L.R. 675, 680 (1947).
As we noted above, the public policy of this State requires that orders touching the support of a wife be subject to modification upon changes in the circumstances of the parties. Therefore the decree of specific performance which will issue under the mandate to follow this opinion will provide that the wife or the estate of the husband may apply to the court for modification of the decree if there is a material change of circumstances, such as the emancipation of the children or the remarriage of the wife. See Restatement, Contracts, § 359(2), p. 638, and 5 Williston, Contracts (rev. ed. 1937), § 1425, p. 3993, for the power of a court to award specific performance on such terms and conditions as justice requires, even to the extent that the *293 performance ordered is not identical with that promised in the agreement. See also King v. Ruckman, 24 N.J. Eq. 556, 565 (E. & A. 1873); 5 Corbin on Contracts (1951), § 1137, p. 612, text at n. 12. Cf. Ferreira v. Lyons, 53 N.J. Super. 84, 89 (Ch. Div. 1958).

VIII.
Finally, defendants contend that, regardless of merger, the husband's obligation to make periodic payments was equivalent to an alimony obligation and must therefore become subject to all the incidents of alimony, including termination at death. Although Dr. Flicker's promise was described in the agreement as being "in lieu of all support, alimony, and maintenance," defendants argue that the essential character of the obligation was that of an alimony order.
This contention has been advanced in all the cases in sister states in which this problem has arisen  to no avail. Courts find no compelling reason to force an analogy between such agreements and a judicial direction for the payment of alimony. Moreover, the "essential character" of the agreement in the case at bar was (quoting from the decree nisi)
"that its provisions will be of greater benefit and advantage to the petitioner than would a provision by way of alimony * * *."

IX.
We appreciate that absolute consistency with the principles expressed primarily by the former Court of Errors and Appeals in the cited cases would seem to require the conclusion that no contract for support or maintenance may be made the subject of specific performance in any respect. But while public policy is opposed to the enforcement of private agreements which purport to encroach upon the court's control over the support and maintenance of the wife, there is nothing offensive to either public or judicial *294 policy for a husband to agree to support his wife and children so long as she lives. Such an agreement, whereby a husband provides for the economic needs of his family after his death, actually has social value and is in harmony with public policy. The approval of such a contract by the court indicates judicial acceptance of the undertaking.
Moreover, it has been suggested that when an application for modification of alimony is presented, the court, in considering all relevant circumstances, may justly be attentive to the wife's proven inability to accumulate reasonable savings against the day when alimony payments may cease because of her husband's death. Martindell v. Martindell, 21 N.J. 341, 354 (1956). Examine the logic of a system of family law that protects the wife from this contingency during the husband's life but would deny her, in the face of the parties' agreement to the contrary, continuing support after his death.
In this case, there are both social and moral factors for the enforcement of the support provision. It is reasonable to assume that when the parties arrived at the sum agreed upon, they did so with the actual as well as the expressed intention that the agreement would "survive any decree for divorce and be binding and conclusive on the parties." Otherwise, they might have made a different arrangement. We cannot say that the wife would have consented to a divorce and the division of property which was made had she thought that her support payments would cease upon her husband's death. Cf. Woodhouse v. Woodhouse, 15 N.J. 550, 556 (1954). Moreover, the will makes no provision for the wife, who released dower interests with the expectation that the agreement would be efficacious, or for the children who are said to be partially physically disabled. Even if they are not disabled, no social, moral or ethical policy is served by relieving the husband's estate from carrying out an obligation which he assumed. It is one thing for a court to decline to enforce the support provisions of an agreement between the parties while the husband is alive and the court has the power to grant its equivalent  alimony; but it is *295 quite another to refuse to enforce an approved agreement when the court is powerless to award alimony or support by reason of the death of the husband.
The judgment is reversed and remanded with directions that summary judgment be entered in favor of the plaintiff.