JOHN THOMAS *vs.* GEORGE DELPHY and WILLIAM. DELPHY.

*Parol promise to pay the Debt of another — Statute of Frauds.*

A parol promise to pay the debt of another, in consideration of forebearance to sue the original debtor, without any new or superadded con-

sideration moving from the creditor to the promissor, is not enforcible, being within the Statute of Frauds.

The consideration to support a parol promise to pay the debt of another, must be such as would be good whether it related to paying such debt, or an equal sum on any other account.

. APPEAL from the Baltimore City Court.

This was an action of *assumpsit* brought by the appellees to recover from the appellant a balance of $633.30, alleged to be due them for the livery of certain horses and for the value of a horse, the property of the plaintiffs, sold by the defendant. Plea — the general issue. The suit was originally brought in the Court of Common Pleas, but was removed by the appellees, on affidavit, to the Baltimore City Court, where a judgment was rendered in their favor for $726.37.

The *narr.* contained eight counts; the first six were the ordinary money counts; the seventh was a special count, alleging a promise on the part of the defendant to pay the bill for the livery of the horses, in consideration of the plaintiffs' forbearance to sue out an attachment against one John Spicer, who was alleged to be separately and not jointly liable for the debt, and of their allowing the horses to remain in the possession of the defendant.

The eighth count alleged the delivery by the plaintiffs to the defendant of an artillery horse to be placed in his contract with the Government; and the failure of the defendant to account to the plaintiffs for the value of such horse.

*Exception:* The plaintiffs offered evidence tending to prove that in December, 1864, the horses, for the livery of which this suit was instituted, were brought to their stables; that on the day after their arrival, the defendant came to the stables and stated to one of the plaintiffs, that the horses were his property, and a contract was made respecting their rate of. livery per day. The plaintiffs also offered evidence tending to prove that the defendant had assented to put a horse

belonging to them into his contract with the United States Government, and that he had been paid $180 for such horse by the Government, and had promised to pay them said amount, but had failed to do so. The plaintiffs further offered evidence tending to show that in March, 1865, one of the plaintiffs presented the bill sued on to the defendant, saying that he would sue if payment were not immediately made; that the defendant then stated that if the plaintiffs would wait a few days, he would shape up the bill, which in the parlance of traders was equivalent to a distinct promise to pay the bill. The defendant proved by himself and one John Spicer that the horses were the sole property of the latter, and that he, the defendant, had no interest in or title to them whatever. The defendant further offered evidence tending to show that he never had promised or agreed to pay the bill of the plaintiffs.

Prayers were offered on both sides, which the Court rejected and instructed the jury as follows:

1st. That if the jury believe from the evidence that the horses in the evidence mentioned, were the property of the defendant, or the joint property of the defendant and John Spicer; and also believe that the plaintiffs, at the request of the defendant, or at the joint request of the defendant and said Spicer, furnished the livery and other matters mentioned in said evidence for the said horses, then the plaintiffs are entitled to recover so much as they may find due for such livery and other matters as charged.

2d. If the jury believe from the evidence, that the said horses were not the sole property of the defendant, or that he had no property therein, yet if they believe that he contracted in his own name and upon his individual responsibility for the livery, care, &c., of said horses, then the plaintiffs are entitled to recover so much therefor as the jury may find due.

3d. If the jury believe that the said horses were the sole property of the said Spicer, and that the plaintiffs were about

to take legal proceedings for the recovery of any claim for livery, &c., furnished for said horses by the plaintiffs, and that the defendant promised and agreed with the plaintiffs that he would pay their said claim, provided they would not take legal proceedings at that time for the recovery thereof, and that the said plaintiffs did so forbear, then the plaintiffs are entitled to recover in this suit.

4th. If the jury believe that the artillery horse in the eighth count of the *narr.* and in the evidence mentioned, was delivered by the plaintiffs to the defendant for sale, for their use, and was so accepted by the defendant, and not returned, sold or paid for by the defendant, then the plaintiffs are entitled to recover the value thereof in this suit.

To the rejection of his prayers and to the instructions given by the Court, the defendant excepted, and the verdict and judgment being against him he appealed.

The cause was argued before BARTOL, C. J., MAULSBY, MILLER and ALVEY, J.

*John Johnson* and *John P. Poe*, for the appellant.

The theory of the second instruction is that the plaintiffs could recover the livery bill, although the defendant had no property in the horses, if he had "contracted in his own name and upon his individual responsibility." There is no question in it of joint ownership or joint liability.

If, as this instruction supposes, the defendant had no property in the horses, and if the owner, Spicer, was known and charged with the bill by the plaintiffs, the primary responsibility (in the absence of all question of joint liability) was manifestly Spicer's; inasmuch as it was his property which was benefitted by the plaintiffs' services.

If Spicer were liable at all on the contract, or if credit were originally given to him, Thomas' responsibility, not being joint, was necessarily secondary or collateral, and required written proof in order to be enforcible against him.

No such proof was offered, and consequently the Court erred in submitting to the jury the question of the appellant's liability upon an alleged *verbal* contract to pay a debt for which, upon the theory of the plaintiffs' case, as presented in this instruction, Spicer was originally liable and still continued liable. *Elder vs. Warfield*, 7 *Har. & John.*, 391; *Connolly vs. Kettlewell*, 1 *Gill*, 260; *Ellicott vs. Peterson*, 4 *Md.*, 476; *Northern Central Railway Co. vs. Prentiss*, 11 *Md.*, 119; *Pittman vs. Cropper*, 13 *Md.*, 190; *Chitty on Contracts*, 507, *et seq.; Smith on Cont.*, 44, 50; *Myer vs. Grafflin*, 31 *Md.*, 350.

The true question in all this class of cases is—to whom was the credit given?

The third instruction was also erroneous. The promise set up in this instruction was a verbal one, and was a collateral, not an original undertaking. The forbearance to resort to legal proceedings to recover the plaintiffs' claim was a consideration connected with, and growing out of the original contract, and is within the Statute.

There was no new and superadded consideration for the alleged promise moving to the appellant from the appellees, so as to make such promise an original undertaking, and thus to withdraw it from the Statute.

The alleged promise here was to "shape up" the still subsisting debt of another—which the appellees were not required to release, and in fact never have released—and is, therefore, precisely like the case of *Fish vs. Hutchinson*, 2 *Wilson*, 94, adopted in *Elder vs. Warfield*, 7 *H. & J.*, 395, 396. See also *Jones vs. Walker*, 13 *B. Monroe*, 360; *Lieber vs. Levy*, 3 *Met.*, (*Ky.*,) 292; *Mallory vs. Gillet*, 21 *New York*, 412, (7 *Smith;*) *Andre vs. Bodman*, 13 *Md.*, 241; *Walker vs. Richards*, 39 *N. H.*, 259; *Rogers vs. Rogers*, 6 *Jones' (Law,) N. C.*, 300; *Kutzmeyer vs. Ennis*, 3 *Dutch.*, (*N. J.,*) 371; *Britton vs. Thrailkill*, 5 *Jones' (Law,)* 329; *Mason vs. Hall*, 30 *Ala.*, 599; *Sterm vs. Drinker*, 2 *E. D. Smith*, 401; *Mallory vs. Gillett*, 23 *Barbour*, 610; *Alger vs. Scoville*, 1 *Gray*, 391; 3 *Parsons on Cont.*, 24; *Nelson vs. Boynton*, 3 *Met.*, 396.

The defendant received no benefit from the alleged promise, and consequently it was altogether without consideration and void. *Nelson vs. Boynton,* 3 *Met.,* 396; *Tomlinson vs. Gell,* 6 *Adol. & El.,* 571.

*John Henry Keene, Jr.,* for the appellees.

MAULSBY, J., delivered the opinion of the Court.

The questions in this case arise on the second and third instructions of the Court. The appellant has not insisted, in the argument, on any error in the rejection of his three prayers, or in the first and fourth instructions.

There is evidence in the record tending to prove that on the morning after the horses were delivered, by an employee of a rail road company, at the stables of the plaintiffs, with a statement that he thought they were Thomas and Spicer's property, the appellant came to the plaintiffs and said the horses were his property, and contracted for their livery.

There is no error in the second instruction. If the jury believed this evidence, the plaintiffs were entitled to recover. No questions of original and collateral responsibility arose under the instruction. It was simply a question of liability of the appellant on his own contract, under which the livery was furnished.

The third instruction, as we construe it, is erroneous. In examining it, we are confined to the proposition of law contained in it, and cannot look, outside the instruction, to evidence in the record, to see whether another proposition may not have been contemplated. The hypothesis contained in it is, that if the jury find that the horses were the property of Spicer, and that the plaintiffs were about to take legal proceedings for the recovery of a claim for livery furnished by them, and that the appellant agreed to pay the claim if they would forbear to take legal proceedings at that time, and that they did forbear, then the plaintiffs are entitled to recover. On what ground? That Thomas, the appellant, had agreed

to pay Spicer's debt in consideration of the appellees' forbearance to sue Spicer!

If this were the law which the instruction was intended to announce, it was erroneous, and it is not susceptible of any other construction. It is based on the idea that Spicer was sole owner of the horses, and as such originally liable for the debt.

It has been settled, by the case of *Fish vs. Hutchinson*, 2 *Wils.*, 94, adopted by the Court of Appeals in *Elder vs. Warfield*, 7 *Har. & John.*, 396, and various other cases, that a promise to pay the debt of another, in consideration of forbearance to sue the original debtor merely, without any new or superadded consideration passing between the promisor and promisee, is within the Statute of Frauds, and must be in writing.

Forbearance to take or to continue proceedings against an original debtor, is a good consideration for a promise by a third person to pay the debt, but the promise must be by writing and not by parol. What is a sufficient consideration to sustain a parol promise, is a question which has arisen in many cases in England and in this country, presenting great varieties of circumstances; and perhaps the variety of circumstances, rather than uncertainty in respect to the rule itself, has given rise to the apparent conflict of authority. The difficulty has been rather in the application of the rule than in the rule itself. As stated in *Roberts on Frauds*, 232, it is, that if the consideration of the new promise "spring out of any new transaction, or move to the party promising, upon some fresh and substantive ground, of a personal concern to himself," the Statute of Frauds does not attach. And *Browne on Statute of Frauds*, (sec. 212,) after a thorough examination of all the cases in which the question has arisen, states it thus: "Wherever the transaction between the parties is such that the primary and distinctive obligation assumed by the defendant is different from that of a guarantor, although, as incidental to, and

in the course of the discharge of that obligation, the debt of another is satisfied, the defendant's promise is not within the Statute." In other words, there must be a valid promise to pay, sustained by a sufficient consideration, which would be good, whether it related to paying the debt of another, or an equal sum of money on any other account. In the case of *Williams vs. Leper*, 3 *Burr.*, 1886, there was something more than a mere parting by the landlord with his lien on the goods in the defendant's possession. That would have been a consideration moving from the landlord only. Leper, the defendant, had possession of the goods to sell, and had advertised them for sale. Here, the forbearance of the landlord to enforce his lien, operated a consideration to Leper. The decision was also placed on the ground of Leper being trustee to sell the goods and receiving the proceeds. It was in this sense that the case of *Williams vs. Leper*, was referred to in *Elder vs. Warfield*, 7 *Harris & John.*, and also in *Andre vs. Bodman*, 13 *Md.*, 241–255, where the Court said that if the appellant was restrained from filing his claim for a lien, by a promise of the defendant to pay him, by which his lien against the property was lost, the defendant would be answerable on his promise. There the defendant was the owner of the property, a lien on which was claimed, and the loss of the right to file the lien operated to the benefit of the promisor. It is not to be understood that, in enforcing a promise of this character, the plaintiff is required to prove that the defendant actually realized any benefit from his promise; but only that the facts and circumstances of the transaction should show that the defendant, in making the promise, expected to realize a benefit to himself — that the arrangement contemplated a benefit to him — was, in his view, such a transaction as that he might derive an advantage from his promise; and so, that in making it, a consideration moved to him, as well as from the plaintiff. This, we apprehend, is the true rule derivable from all the authorities.

If the instruction, in this case, had been based on an hypothesis, that the appellant had in his possession, in March, 1865, horses belonging to Spicer, or in which Spicer had an interest, jointly with the appellant or otherwise, which possession of the appellant was in the course of some proceeding for, or for a purpose of, realizing some real or supposed benefit or advantage to himself therefrom, and which might have been seized by the appellees under an attachment against Spicer, and that the appellees notified the appellant that they were about to issue such attachment, and he thereupon promised that he would pay their claim against Spicer, if they would forbear to do so, and to seize the horses in his possession, and they did forbear, it would have presented the question of a new or superadded consideration between the promissor and promissees, and have been within the rule stated. In that case the promise would be not to pay the debt of Spicer, in consideration of forbearance to sue Spicer, merely, but to pay it in consideration of forbearance to seize the horses in the appellant's possession, held by him for his benefit. The promise would be, not simply to pay the debt of another, but in effect, to pay an amount of money, equal to the debt of another, in consideration of the benefit, real or supposed, conceded to the promissor by the promissee forbearing to interfere with his possession.

Such was not, however, the instruction in this case, nor is such a state of facts clearly set out in the record, although the record does contain a statement from which it might be inferred, perhaps, that such facts existed.

The second instruction being correct, but the third erroneous for the reasons assigned, the judgment must be reversed.

*Judgment reversed and
new trial awarded.*

(Decided 15th December, 1870.)