### DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

#### OF THE

## STATE OF NEW JERSEY.

### MARCH TERM, 1911.

---

JAMES H. MACKINTOSH, EXECUTOR, &c., OF SARAH F. MACKINTOSH, DECEASED, DEFENDANT IN ERROR, v. ELLA J. GIBBS AND COLEMAN A. GIBBS, PLAINTIFFS IN ERROR.

Submitted March 27, 1911—Decided June 19, 1911.

1. In an action against the indorsers of a promissory note made in the State of California and payable there, and indorsed for value before maturity to the plaintiff's testatrix in the State of New Jersey—*Held*, that the liability of the defendants upon the note depends upon the legal effect of their act as determined by the law of this state, where the transfer of the note was made.

2. In an action against the indorsers of a promissory note made in the State of California and payable there, and indorsed for value before maturity to the plaintiff's testatrix in the State of New Jersey—*Held*, that the question whether the note was negotiable according to the law of New Jersey was material because of its effect upon the contract of indorsement, and that unless the instrument was negotiable the action could not be maintained.

3. The Negotiable Instruments act (*Pamph. L.* 1902, *p.* 583) was approved April 4th and took effect (under *Gen. Stat., p.* 3195, *pl.* 37) on July 4th in the same year. By section 195 thereof it is, however, expressly declared that "The provisions of this act do not apply to negotiable instruments made and delivered prior to

the passage hereof." *Held,* that this section manifests the intent of the legislature to leave entirely unaffected by the act all negotiable instruments that were made and delivered as between the original parties prior to the passage of the act, and the question of the negotiability of a promissory note made and delivered before the act was passed, but falling due after the act went into effect, must be decided as the law stood prior to the act of 1902.

4. Under the "Act concerning promissory notes," &c., approved March 27th, 1874 (*Gen. Stat., p.* 2604), a promissory note made payable two years after its date, with interest payable semiannually, and containing a clause that upon any default in payment of the interest the whole of the principal and interest should become immediately due and payable at the option of the holder, and an additional stipulation that should suit be commenced or attorney be employed to enforce payment of the note, an additional sum of six per cent. upon principal and accrued interest would be paid as attorney's fees in such suit—*Held,* negotiable.

5. Under the "Act concerning promissory notes," &c., approved March 27th, 1874 (*Gen. Stat., p.* 2604), it was not necessary that a promissory note be presented by a notary public for payment, nor was protest, strictly so called, necessary to fix the endorser's liability.

6. Prior to the act of 1902 (*Pamph. L., p.* 583), the established rule in this state was that notice of dishonor of a promissory note, when sent by mail, might be placed in the post-office on the day after dishonor, allowing a sufficient time after the commencement of business hours on that day for the preparation of the notice.

On error to the Supreme Court, whose opinion is reported in 50 *Vroom* 40.

For the plaintiffs in error, *Peter Backes.*

For the defendant in error, *Patterson & Rhome.*

The opinion of the court was delivered by

PITNEY, CHANCELLOR. This action was brought against the indorsers of a promissory note, made in the State of California and payable there, and indorsed for value before maturity to the plaintiff's testatrix in the State of New Jersey. The facts are sufficiently set forth in the opinion of the Supreme Court. We concur with that court in the view that the question of the liability of the defendants upon the note de-

pends upon the effect that the law attributes to their act, and that such effect is to be determined by the law of the State of New Jersey, where the transfer of the note was made. *Freese* ads. *Brownell,* 6 *Vroom* 285, 288; *Oliphant* v. *Vannest,* 29 *Id.* 162; 7 *Cyc.* 836.

But the question whether the note in suit was negotiable according to the law of New Jersey is material because of the effect that it has upon the contract of indorsement. The plaintiff's right of action, under the evidence herein, depends solely upon the existence of that peculiar liability on defendants' part which is assumed by the indorser of negotiable paper; so that unless the instrument is negotiable the action cannot be maintained. *Building Society* v. *Leeds,* 21 *Vroom* 399.

The note is made payable two years after its date, with interest payable semi-annually, and contains a clause providing that upon any default in payment of the interest the whole principal and interest shall become immediately due and payable at the option of the holder, and an additional stipulation that should suit be commenced or attorney be employed to enforce payment of the note an additional sum of six per cent. upon principal and accrued interest would be paid as attorney's fees in such suit. The Supreme Court deemed that it was unnecessary to determine whether a promissory note in this form was negotiable by the law of this state prior to the year 1902, because by section 2 of the Negotiable Instruments act (*Pamph. L.* 1902, *p.* 583) provisions of this character do not interfere with negotiability.

We are unable to concur in this view. The note in suit was made and delivered prior to the passage of the act. It is true that before it fell due, and, indeed, before it was indorsed by the defendants and transferred to the plaintiff's testatrix, the act went into effect. The statute was approved April 4th, 1902, and took effect (under *Gen. Stat., p.* 3195, *pl.* 37) on July 4th in the same year. But by section 195 it is expressly declared that "the provisions of this act do not apply to negotiable instruments made and delivered prior to the passage

hereof." If this section is construed (as the Supreme Court must have construed it) so that an indorsement made subsequent to July 4th, 1902, would be subject to the provisions of the act, and the contract of the indorser governed accordingly —although the note was made and delivered as between the maker and payee prior to the passage of the act, and the contract of the maker and of any indorser who put his name upon the paper prior to the passage of the act would be governed by the law as it stood before the act—we are confronted with this difficulty, that the legislature must have contemplated a transition period between the old law and the new, during which (with respect to instruments bearing date prior to the passage of the act and falling due after it took effect) parties dealing in commercial paper would have been left in doubt as to the law governing the responsibility of successive parties; perhaps required to apply one rule as to the first indorser, and another rule as to a subsequent indorser, and therefore put upon inquiry as to the respective dates of successive indorsements. We are not convinced that the legislature intended to leave the mercantile business of the state, even temporarily, subject to such embarrassment. In our opinion the plain and simple language of section 195 manifests the intent of the legislature to leave entirely unaffected all negotiable instruments that were made and delivered as between the original parties prior to the passage of the act; thus remitting all inquiries concerning the rights and liabilities of indorsers and indorsees, as well as of makers and payees, to a single date, presumably evidenced by the date written upon the instrument.

We must inquire, therefore, whether apart from the act of 1902 the instrument in question was negotiable by the law of New Jersey.

Our previous statute was the "Act concerning promissory notes," &c., approved March 27th, 1874 (*Gen. Stat., p.* 2604), the first section of which traces its origin to the act 3 & 4 *Anne, c.* 9, § 1. Under the latter statute it was long ago held in England that a note payable in installments was negotiable (*Oridge* v. *Sherborne,* 11 *M. & W.* 373); and that a

condition that the whole amount should become immediately payable on default in the payment of a single installment did not destroy its negotiability. *Carlon* v. *Kenealy,* 12 *Id.* 139. The same rule obtains generally in this country. *Chicago Railway Co.* v. *Merchants Bank,* 136 *U. S.* 268, 284; 1 *Randf. Com. P.,* § 12; 7 *Cyc.* 599.

The effect of a provision for attorney's fees to be added in the event of suit brought has given rise to some difference of opinion, but the greater weight of authority, and also the better reasoning, as we think, is in favor of the negotiability of notes containing such a provision which becomes effective only in case of default in payment of the note at maturity. The cases are collected in 1 *Randf. Com. P.,* §§ 805, 806, and in 7 *Cyc.* 584, &c. See, also, 4 *Am. & Eng. Encycl. L.* (*2d ed.*) 99.

The note being negotiable, the engagement of defendants as indorsers was that if it was presented for payment at the time and place of maturity and payment demanded and refused, and proper notice given to them of such demand and refusal, they would pay the note to the holder.

Prior to the Negotiable Instruments act it was not necessary that a promissory note be presented by a notary public, nor was protest, strictly so-called, necessary to fix the indorser's liability. (We, of course, do not intend to intimate that the act of 1902 changed the law in this regard.) The statute (*Gen. Stat., p.* 2605, § 9) providing for the protest of notes by a notary public was not intended to make such a protest a condition precedent to liability of the indorser, but to supply a convenient means of proving demand and notice of dishonor by the certificate of the officer performing the service. *Sussex Bank* v. *Baldwin,* 2 *Harr.* 487; *Burk* v. *Shreve,* 10 *Vroom* 214.

In the case before us, the finding of facts by the trial judge is to the effect that upon the date when the note fell due it was presented on behalf of Mrs. Mackintosh at the bank where payable and its payment demanded and refused; and on the following day payment was again demanded and refused, and

the note was then formally protested for non-payment and no-tice of such protest and demand was mailed to each of the defendants. It seems to us that this is equivalent to a finding that due notice of dishonor was mailed to the defendants on the day after the note fell due. Of course, the making of a second demand did not detract from the effect of the first demand and refusal. Nor do we think the judge's finding can reasonably be construed as meaning that the notice sent to the indorsers referred alone to the second demand and refusal. As to the time of sending this notice, the established rule in this state (prior to the act of 1902) was that notice of dishonor when sent by mail might be placed in the post-office on the day after dishonor, allowing a sufficient time after the commencement of business hours on that day for the preparation of the notice (*Sussex Bank* v. *Baldwin, supra; Burgess* v. *Vreeland,* 4 *Zab.* 71), and such was the general rule (7 *Cyc.* 1087). We deem the findings of the trial judge sufficient to import due demand and notice of dishonor.

Upon the question of the effect of the proceedings that were had in California for the foreclosure of the mortgage given as security for the note in question, and the effect of the decree of distribution made in the California administration proceedings, we agree with the Supreme Court.

The result is that the judgment of that court should be affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, BERGEN, BOGERT, VREDENBURGH, SULLIVAN, CONGDON, JJ.    7.

*For reversal*—GARRISON, VOORHEES, MINTURN, JJ.    3.