STANDARD RADIO CORPORATION ET AL., APPELLANTS,
v. TRIANGLE RADIO TUBES, INC., ET AL., RESPOND-
ENTS.

Argued May 7, 1940—Decided July 29, 1940.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and
PERSKIE.

For the appellant, *Philip J. Schotland.*

For the respondents, *Lum, Tamblyn & Fairlie (James R.
Berry).*

The opinion of the court was delivered by

PARKER, J.  The Common Pleas, on motion to strike out
the complaint as (a) insufficient in law, and (b) as sham,
made an order to strike it "because it fails to show a cause
of action" and judgment for defendants was entered accord-
ingly.  We read the order as ignoring the claim that the
complaint is sham; for a sham pleading we understand to
be one which, not challenged in law, is untrue in point of
fact.

Passing questions of fact for the present, we proceed to the
inquiry whether the complaint on its face fails to state a
legal cause of action.  It is an extremely verbose document,
but the general factual situation alleged is that defendants

(called "Triangle" in a contract involved in this cause) were manufacturers, and plaintiffs (called "Factors" in that con-. tract) were purchasers of certain electrical products; that plaintiffs had expended time and money in building up a market, relying on agreements that defendants would not interfere therein: and for convenience of delivery had disclosed to defendants the names and addresses of customers; that defendants proceeded to sell direct, concealing such sales from plaintiffs, took away their business, and ultimately demanded, and by threats of legal action intimidated plaintiffs into conceding, a surrender of their contract rights, claims, demands and causes of action * * * "for a sum far less than the reasonable value thereof." The last paragraph of the first count, which was the only one considered below and the only one relied on here, is as follows: "Plaintiff, thereby becoming apprehensive and fearful that if it did not comply with the demand of the defendants that the said defendants would carry out their said threats, and its entire business would be utterly ruined, and its business having already been seriously hampered and its opportunity for enjoying the benefits and advantages of its contracts and goodwill, and its opportunity to engage in trade, having already been seriously impaired in reliance upon the defendants' representations set forth herein and acting under the threat, compulsions and coercion of the defendants, as aforesaid, did on May 19th, 1937, accede to said demand, thereby causing plaintiff great loss and damage to the extent of $250,000."

From this it is plain, in a general way, that plaintiff accepted an inadequate money consideration and a material alteration in contractual relations, because of threats of litigation and of competition and other action contrary to the original contracts. It seems clear, however, that there was no legal duress which compelled plaintiff to "accede to the demand." If not, the consent was voluntary in law and affords no basis for recovery so far as duress is concerned. *McCrory Stores* v. *Braunstein,* 99 *N. J. L.* 166; *Byron* v. *Hefferman,* 98 *Id.* 127.

It remains to consider whether the complaint counts essentially on fraud, or on a malicious scheme to injure the busi-

ness of the plaintiff and secure that business for the defendants. We think that it does count on both fraud and malice. In the latter aspect, the case would seem to fall within the rule laid down in the leading case of *Van Horn* v. *Van Horn,* 56 *N. J. L.* 318, followed in *Louis Kamm, Inc.,* v. *Flink,* 113 *Id.* 582. In paragraph 18 of the first count, we read in subparagraph (a) of defendant purposely furnishing bad tubes: in subparagraph (c) of interference with customers; in (e) of labeling tubes with the wrong brands; and in (f) of purposely delaying deliveries so as to make trouble between plaintiff and its customers. As the contract, a copy whereof is annexed to and made a part of the complaint, expressly provides that it does not impose on defendant any obligation to deliver any tubes whatsoever, and the term was limited in paragraph 15 to one year, which had expired, and thereafter was terminable at will, it is difficult to understand why (if it be the fact) defendant should have resorted to underhand methods to discontinue the business connection by forcing plaintiff to sell out at a low price, instead of cancelling the connection. But the allegations of malicious injury and of fraud nevertheless remain, and we consider that if proved they would support a recovery unless met by an adequate defense. The claim is essentially in tort. *Kamm* v. *Flink, supra* (at *p.* 584 *et passim*). In this situation, without more, it would be error to hold that the complaint is insufficient in law.

The motion to strike out was put upon the further ground that the complaint was "sham;" essentially in that in fact all matters of difference between the parties had been composed, a money consideration paid by defendant for plaintiffs' rights, and a mutual release executed by all parties.

Affidavits were submitted on both sides, and considered by the court in disposing of the motion. They contain copies of the alleged releases; and defendants' motion and affidavits are consequently tantamount in substance, on this branch of the case, though of course not in form, to a plea, or under the present practice an answer, setting up a release by plaintiffs of all rights of action. The court below undertook to dispose of the case in a summary way, on motion and affidavits, by

striking out the complaint as insufficient in law, and also as sham; which naturally resulted in a judgment for defendants. This involved a finding of fact that the complaint was false, particularly in its allegations of fraud and malicious injury. We think this was erroneous, and that the proper course was to require the defendants to plead the releases and any other matter germane to the issue, and the plaintiff to reply or move to strike out for insufficiency in law; any issue of fact raised on the record to be tried by a jury.

To this end the judgment for defendants is reversed, and the cause remanded for a proper course of pleading and a trial on the merits of any matter of fact involved. Costs to abide the event.