**WARNER–LAMBERT PHARMACEUTICAL CO., Appellee,**

v.

**William SYLK, Appellant.**

**No. 71–1944.**

United States Court of Appeals, Third Circuit.

Submitted Oct. 5, 1972.

Decided Nov. 17, 1972.

John David Egnal, Egnal & Egnal, Philadelphia, Pa., for appellant.

Robert P. Herzog, New York City, for appellee.

Before SEITZ, Chief Judge, and FORMAN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

Warner-Lambert Pharmaceutical Co., (herein called Warner-Lambert) appellee, a corporation of Delaware, doing business in Morris Plains, New Jersey, pursuant to authority granted by that State, delivered to Collins Wholesale Drug Company, Inc. (Collins), a Pennsylvania corporation, merchandise to an amount of about $20,000.00, for which Collins failed to pay. Thereupon Warner-Lambert sought its remedy in a suit in the Superior Court of New Jersey, Chancery Division, Camden County, for an injunction restraining Collins from any activity and for a receiver. A temporary restraining order was issued on August 4, 1969, and a hearing was set for August 15.

On August 14 at a last minute settlement of the New Jersey litigation, in which William Sylk, appellant, a resident of Pennsylvania, engaged, Collins executed and delivered to Warner-Lambert a series of thirteen promissory notes to it or its order, in the aggregate sum of

$19,567.07.[1] Each note was payable at the office of Berenson, McLaughlin and Kohn, 744 Broad Street, Newark, New Jersey, and bore the provision: "that upon the default in the payment of any of the notes, the remaining notes shall become due and payable without notice together with attys. fees."

Each note contained the following endorsement on its reverse side:

"For value received the undersigned and each of them hereby forever waives presentment, demand, protest, notice of protest and notice of dishonor of the within note and the undersigned and each of them guarantees the payment of said note with interest at maturity or any time thereafter and consents without notice to any and all extensions of time or terms of payment made by holder of said note.

"Name WILLIAM SYLK
"Address 400 Bryn Mawr Ave.
 Bryn Mawr, Pa. 19010"

The payment of Collins's indebtedness as represented by the notes was protected by a security agreement executed by Collins covering a schedule of its goods described therein. It provided for a cash payment of $1,070.98 upon its execution. Also, Collins and Mr. William Sylk (said to be the principal stockholder in New Sun Ray Drug Company) each executed a bond and warrant on August 15, 1969, to confess judgment in favor of Warner-Lambert for $20,640.05.

The foregoing recital is gleaned from the pleadings in this suit filed by Warner-Lambert in the United States District Court for the Eastern District of Pennsylvania on November 18, 1969, (Civil Action No. 69–2730) against Mr. William Sylk, which followed the alleged default by Collins and him to pay the third note due October 31, 1969, for $5,000.00. Warner-Lambert alleged the default under the terms of the accelerated payment provision on all of the notes and demanded judgment for $14,469.07 plus $5,000.00 for attorney's fees, or an aggregate of $19,569.07 (sic).

Mr. Sylk filed an answer and cross-claim [2] in which he resisted Warner-Lambert's complaint on the grounds that he owed Warner-Lambert nothing for the following reasons:

(1) Because an arrangement was orally made between Mr. Thomas Sylk, son of Mr. William Sylk, and Secretary [3] of Collins and the attorney of Warner-Lambert, which provided for a change in the original agreement under which the third note for $5,000.00 due October 31, 1969, was to be liquidated by two payments of $1,000.00 each and an additional payment of $2,500.00 on or before December 31, 1969; the next installment of $1,000.00 was to be deferred until March 1, 1970, and the other payments of $1,000.00 and the balance each were to be made monthly thereafter.

(2) After payments of $9,500.00 and credits given for $488.47, Collins would owe only $9,134.14 less the value of returned merchandise, leaving the court without jurisdiction.

(3) Briefly stated, the so-called cross-claim alleged that Collins was without funds to meet its indebtedness to Warner-Lambert and offered its bond and promissory notes, but Warner-Lambert advised Mr. William Sylk, principal stockholder of New Sun Ray Drug Company, that it would accept them only if he endorsed the notes. At the time of this demand Warner-Lambert and Mr. William Sylk, as he alleged, believed that the receivership proceedings, in the light of the understanding in the drug industry that there was an

---

1. Each note was dated August 14, 1969. The first was for $1,000.00 and fell due August 31, 1969; the second, for $4,000.00, on September 30, 1969; the third, for $5,000.00, on October 31, 1969; the next nine, each for $1,000.00, due consecutively a month apart; and the last, for $569.07, due August 31, 1970.

2. The denominated "cross-claim" is a misnomer and should have been called an affirmative defense or a counterclaim in accordance with the comment of the District Judge. App. 58a n. 2.

3. App. 32a, 42a. See also 40a. Messrs. Thomas and William Sylk are lawyers.

"affinity" between Collins and New Sun Ray, would be considered as a proceeding against New Sun Ray and threatened to cause serious financial damage to New Sun Ray by inducing its creditors to initiate a "collective adversary proceeding against it." This was claimed to constitute duress on the part of Warner-Lambert against Mr. William Sylk. The dismissal of the claim was requested and restoration of sums paid by Mr. William Sylk.

Warner-Lambert, after filing a reply to Mr. Sylk's "cross-claim," noticed a motion for summary judgment pursuant to Rule 56 F.R.Civ.P., which District Judge Hannum considered on the pleadings, documents and affidavits filed by the parties. In a Memorandum and Order[4] he rejected Mr. William Sylk's argument that the oral agreement modified the original written agreement with respect to the time for and amount of payments to be made, as not presenting a genuine issue of fact preventing relief under Rule 56.[5]

Another argument was presented by Mr. Sylk, predicated on the allegations in his "cross-claim" that he had been forced to endorse and guarantee the payment of the promissory notes under circumstances of economic duress and, therefore, his participation was involuntary. The District Judge, on this contention, concluded:

> "It is not clear, however, on the record as it now exists, whether this defense is present and available to the defendant. In a situation such as this, the court may pursuant to Fed. R.Civ.P. 56(f) order a continuance to permit further discovery. With the aid of additional discovery, affidavits could then be filed stating with particularity the facts which form the ba-

sis of the alleged duress. Additional discovery could also clarify whether the transactions in question did in fact involve circumstances of duress or were in fact economically beneficial to the defendant. But in any event, what is needed is more information to afford the court a basis upon which a decision could properly be made.

"Accordingly, the court enters the following:

### "ORDER

"AND NOW, this 31st day of December, 1970, it is hereby ORDERED that plaintiff's motion for summary judgment is DENIED WITHOUT PREJUDICE to permit further discovery on the question of alleged economic duress."[6]

Later the case came up on a trial calendar before District Judge Gorbey, whereupon Warner-Lambert renewed its motion for summary judgment. In a Memorandum and Order Judge Gorbey, 53 F.R.D. 206, confined his consideration only to the issue: whether Warner-Lambert was entitled to judgment as a matter of law in the face of Mr. Sylk's allegation that his endorsement and guarantee arose from business compulsion. After noting that Mr. Sylk, subsequent to the Rule 56(f) continuance, had not availed himself of the opportunity to provide a factual basis for his claim, which had been pleaded in the broadest generalities (denied by Warner-Lambert in its reply to the "cross-claim"), and, furthermore, had not offered proof of his inability to do so, concluded:

> "Plaintiff, under all the facts presented, is entitled to judgment as a matter of law. This Court has before it no factual basis for defendant's defense or counterclaim. Accordingly,

---

4. Reported at Warner-Lambert Pharmaceutical Co. v. William Sylk, 320 F. Supp. 1074 (1970).

5. Judge Hannum concluded as to this contention:
 "Since the original agreement was required to be in a signed writing and

since the only evidence of an alleged modification consists of two self-serving letters signed only by the defendant, it is clear that such evidence is insufficient to raise genuine issues of material fact."

6. App. 56a.

for the above reasons, plaintiff's motion for summary judgment is granted." [7]

He ordered the entry of judgment in favor of Warner-Lambert for $14,569.07 with interest and for $3,866.50 as reasonable attorney's fees.

This appeal by Mr. Sylk followed. He reiterates the issues he presented to the District Court, and also raises the issues of the propriety of the award of attorney's fees and the application of the acceleration provision, both of which were provided on the face of the notes but not in the endorsement signed by Mr. Sylk.

### I

No question is raised but that the case is governed by New Jersey law.[8] In Romano v. Brown,[9] considered by the District Court, the test—"to whom was the credit given"—is used to determine whether a contract is primary or collateral, and so whether it is within or without the operation of the New Jersey Statute of Frauds.[10] There is no doubt that the undertaking was collateral in the first place, since the credit was extended to Collins and guaranteed by Mr. Sylk. However, Mr. Sylk contends that the forbearance by Warner-Lambert to sue Collins constituted a new consideration running to the promisor and thus took the agreement out of the Statute. *Romano* goes on to say:

> "And where the promise to pay the debt of another is founded upon a new consideration, and this consideration passed between the parties to the promise, and gives the promisor a benefit which he did not enjoy before, and would not have possessed but for the promise, it will be regarded as an original promise, though not in writing. Federal Wine, &c., Co. v. Jabberwock Country Club, *supra* (at p. 334, 199 A. at 595)." [11]

Here the guarantee agreement was in writing, but Mr. Sylk raises the defense that it was not required to be in writing and therefore could be verbally modified. See Nephi Processing Plant v. Western Co-op. Hatcheries.[12]

In Willow Brook Recr. Center, Inc. v. Selle,[13] cited by Judge Hannum, the general rule is stated "that a contract which the statute of frauds requires to be in writing may not be modified by a subsequent oral agreement." By negative implication the agreement could be orally modified if it was not required to be in writing. However, the new consideration must be of a special nature as pertinently discussed in Cowenhoven v. Howell,[14] where the distinction was expressed as follows:

> " . . . in case of a promise to become liable for an existing debt or obligation, there must, in order to sustain such promise, and render it unobjectionable in view of the statute, be a substantial consideration moving to such promisor. In such transactions, the simple fact that a good consideration for the assumption exists, is not sufficient; but superadded to this, such consideration must be apparently beneficial to the party under-

---

7. App. 59a.

8. Evidenced by ¶ 18 of the agreement of Warner-Lambert and Collins. App. 32a.

9. 125 N.J.L. 293, 15 A.2d 818 (E. & A. 1940).

10. The New Jersey Statute of Frauds, 25 N.J.S.A. § 1–5, provides:
"No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some

other person thereunto by him lawfully authorized:

\* \* \* \* \*

"b. A special promise to answer for the debt, default or miscarriage of another person;

" \* \* \* \* "

11. Federal Wine, &c., Co. v. Jabberwock Country Club, 120 N.J.L. 331, 199 A. 594 (E. & A.1940).

12. 242 F.2d 567 (10 Cir. 1957).

13. 96 N.J.Super. 358, 233 A.2d 77 (1967).

14. 36 N.J.L. 323 (Sup.Ct.1873).

taking to pay the debt and assume the obligation. By force of the statute, an unwritten promise to pay the debt of another, is inefficacious; the new assumption, consequently, if it is to have any legal obligation, must not have such an object in view as its primary purpose, but the primary purpose must be to promote the interest of him who takes the burthen upon himself. Hence it is, that in such transactions, a mere detriment to the promisee, the original obligation remaining unextinguished, will not support a promise of this character. Such a consideration would be good at common law, independently of the effect of the statute, because before the passage of the act, any legal agreement to pay the debt of another was valid, but now such an agreement must be in writing. The consequence is, that agreements which will have the effect to discharge the debt of another, must be founded in a motive of interest, selfish in the promisor. The distinction is between a promise, the object of which is to promote the interest of another, and one in which the object is to promote the interest of the party making the promise. The former is within the operation of the statute. The latter is unaffected by it." p. 325.

Restatement of Contracts § 184 qualifies the rule that the receipt of a consideration actually or apparently "desired by the promisor mainly for his own pecuniary or business advantage" takes the promise out of the Statute by adding "unless the consideration is merely a premium for the promisor's insurance that the duty shall be discharged." [15]

Previously he had commented "By the weight of authority, a promise to the creditor to pay his claim in consideration of mere forbearance to sue his original debtor is within the Statute." [16]

Although mere forbearance to sue the original debtor is generally not enough to take the promise out of the Statute, forbearance in a situation where the promisor has some personal interest or advantage would be sufficient.

An issue precisely similar to the present case has not arisen in New Jersey. The case of Saxton v. Landis [17] held that an oral promise to pay the debt of a third person, in consideration that the plaintiff forbear the prosecution of the debtor, is void under the Statute of Frauds.

In *Cowenhoven, supra,* 36 N.J.L. at p. 326, two early cases of forbearance to sue are cited as examples of oral promises made void by the Statute. By contrast, examples are given from "the obverse line of cases, where it has been held that the statute was inapplicable":

"In this class, Williams v. Leper, 3 Burr. 1886 is a leading case. The plaintiff, as landlord, was about to distrain for rent certain goods in the possession of the defendant, who was a broker employed to sell the goods; and the latter promised the landlord to pay the rent if he would abstain from proceeding. This undertaking was held to be valid on the ground that the broker, being in possession and having a personal interest to protect, was moved to enter into the agreement by these considerations. The theory put in force was that the promise proceeding from such a motive, personal to the promisor, was original and not collateral."

See also Thomas v. Delphy [18] and De Waters v. Mergler,[19] discussed by Williston, 3 Williston on Contracts, § 470, p. 423. Following this line of reasoning, some interest in the property of the debtor on the part of the promisor is needed in order to make forbearance to sue the original debtor sufficient consid-

15. 3 Williston on Contracts § 473, p. 442 no. 6.

16. See cases cited *Id.* § 473, pp. 439, 440.

17. 16 N.J.L. 302 (1838).

18. 33 Md. 373.

19. 183 Md. 574, 39 A.2d 668.

eration to take the promise out of the Statute.

In the case at bar, appellant has stated that he "is not the holder of any shares of stock nor an officer or employe of Collins." [20] He states that Collins has acted as buying agent for New Sun Ray Drug Co., and so it has become associated in the minds of suppliers in the drug industry as having an "affinity" with New Sun Ray. He felt that creditors might have interpreted the action against Collins as instability in New Sun Ray, and that this might precipitate a "domino action affecting his company," resulting in a collective creditor proceeding against it.

Mr. Sylk brought forward nothing which would give rise to even an inference that he could prove the foregoing. The same facts would have been needed to prove the alleged "business compulsion" pleaded in the so-called "cross-claim" as would have been necessary to support what he terms new consideration. The continuance designed by Judge Hannum as an opportunity to produce any assurance of fact support for the bare allegation was not productive. Therefore his statement remains no more than mere speculation.

■ Aside from the issue of the Statute of Frauds, the grant of summary judgment on the alleged oral modification was proper in that there was no indication that Mr. Sylk could prove that such an oral agreement of extension, denied by Warner-Lambert, had been entered upon. Even if there were no need for *written* proof of the agreement, at least *some* offer of proof would be required, but other than the naked allegation, there was no suggestion that such an agreement existed except, as found by the District Judge, in two self-serving letters signed by Mr. Sylk. Hence, as held by Judge Hannum, no substantial

issue of fact was raised by Mr. Sylk around the Statute of Frauds questions. It is well settled that an agreement to modify an exising valid agreement must have consideration to support it. Kruger v. Mark; [21] Von Alberti v. Bierman.[22] Here no consideration for the alleged modification ran to Warner-Lambert. Therefore appellant's defense of an oral agreement of extension immunizing him from his liability to Warner-Lambert must fail.

## II

Turning next to Mr. Sylk's contention that in any event he is not liable on the debt because of the pressure of economic duress exerted against him by Warner-Lambert, he cites copiously from Miller v. Eisele,[23] which in turn quotes Section 492 of the Restatement of Contracts defining duress as:

"(a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or (b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement."

■ Thus there are two elements of duress: (1) the wrongful threat, and (2) the fear inducing loss of free will and judgment.

Mr. Sylk also seeks to invoke the doctrine of an expanding definition of what constitutes business or economic compulsion, and cites Williston among others as authority. But an examination of that treatise reveals that however the doctrine may be expanded, the element of *wrongfulness* in the defendant's conduct again is essential, and specifically a threat to litigate, made in good faith, is

20. App. 13a, ¶ 15.

21. 135 N.J.Eq. 1, 37 A.2d 100 (Ch.1944).

22. 117 N.J.L. 431, 189 A. 387 (E. & A. 1937).

23. 111 N.J.L. 268, 168 A. 426 (E. & A. 1933).

excluded from a definition of wrongful conduct.[24]

Mr. Sylk also relies on S.P. Dunham & Co. v. Kudra,[25] wherein defendant, who cleaned fur coats for the fur concessionaire of plaintiff's department store, withheld the coats of plaintiff's customers which were in his possession until plaintiff paid off the debts of the concessionaire furrier for the preceding two years. This was clearly a wrongful act, to use the circumstance of his possession of the fur coats of plaintiff's customers, with winter temperatures occurring, in order to pressure plaintiff into paying a debt for which it was without legal responsibility.

For the proposition that the concept of "fear" has been liberalized, Mr. Sylk further cites Rubenstein v. Rubenstein.[26] It is true Rubenstein, also quoting Williston, holds that the test need not be a fear sufficient to overcome the will of a person of "ordinary firmness," but rather "unlawful threats" which do "in fact overcome the will of the person threatened, and induce him to do an act which he would not otherwise have done, and which he was not bound to do, constitute duress. . . . Williston on Contracts, section 1605." Regardless of the kind of fear induced, however, the essential requirement of wrongful conduct remains. In Rubenstein, the defendant wife had used threats against her husband's life to induce him to convey realty to her. Such wrongful conduct, if proved, was held to be sufficient to nullify the transfer alleged by the plaintiff husband to have been made under duress.

■ In addition to examining the foregoing authorities cited by Mr. Sylk, we have reviewed all other references made by him, and we do not find in them the support of the position he claims. Moreover, New Jersey cases have held that threats of legal proceedings to be instituted unless a party executes a certain paper do not of themselves amount to legal duress. Standard Radio Corp. v. Triangle Radio Tubes, Inc.;[27] Prudential Ins. Co. of America v. Fidelity Union Trust Co.[28] Thus it is obvious that there is nothing wrongful about a creditor's instituting legal proceedings to recover on his debt.

The record is not clear as to how the transaction between Warner-Lambert and Mr. Sylk was initiated, but all the circumstances available give rise to the reasonable inference that the approach was made by Mr. Sylk. Also, Warner-Lambert's original New Jersey suit was not against Mr. Sylk's corporation. Indeed, the fear that Mr. Sylk alleged resulting from the threat of legal proceedings was not the kind of fear which precluded him from exercising free will and judgment, to the extent that no substantial issue of fact remains for trial. In sum, there was no wrongful act which overcame Mr. Sylk's will, but rather there was a legal detriment to Warner-

---

24. 13 Williston, 3 Ed. § 1606 states, "The Pressure Must be Wrongful; Threatened Suit. One element of the early law of duress continues to exist, however much its boundaries may otherwise be extended. The alleged pressure must be wrongful. That which is unlawful is clearly wrongful. Tortious acts are also wrongful. Yet even acts lawful and non-tortious may be *wrongful* depending on the circumstances. (Citations omitted.)

"The law provides certain means for the enforcement of their claims by creditors. It is not duress to threaten to resort to these measures. Therefore, a threat to bring a civil action or to resort to remedies available under a contract is not such duress as will justify rescission of a transaction induced thereby. [Citations, including Turner v. Barber, 66 N.J.L. 496 [49 A. 676] (Sup. Ct.1901).] This is true even though it is subsequently determined that there is no legal right to enforce the claim, provided the threat is made in good faith, i. e., in the reasonable belief that a possible cause of action exists." (Citations omitted.)

25. 44 N.J.Super. 565, 131 A.2d 306 (1957).

26. 20 N.J. 359, 366, 120 A.2d 11 (1956).

27. 125 N.J.L. 131, 14 A.2d 763 (Sup.Ct. 1940).

28. 128 N.J.Eq. 327, 15 A.2d 888 (E. & A.1940).

Lambert which furnished the valuable consideration referred to in the endorsement, and which was desired by Mr. Sylk.

 Finally, the contention of Mr. Sylk that his guarantee contract on the reverse of the notes did not obligate him to pay for the attorney fees and to be bound by the acceleration clause is also without merit. Section 3–416(1) of the Uniform Commercial Code 12A N.J.S.A. provides:

"(1) 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party."

The New Jersey Study Comment states:

"1. Section 3–416 provides a new statutory definition of the contract of the guarantor. The section declares the common commercial understanding as to the meaning and effect of words of guaranty added to a signature. One who by indorsement guarantees payment waives the conditions precedent that usually attach to the indorsement contract and becomes for all practical purposes a co-maker."

The Uniform Commercial Code comment which follows the New Jersey comment to this section is that "the liability of the indorser becomes indistinguishable from that of a co-maker."

The contract signed by appellant states "the undersigned . . . guarantees the payment of said note." This section is in accord with Newark Finance Corp. v. Acocella,[29] which involved a note bearing an acceleration clause on its face. The court said that "One who guarantees payment becomes absolutely liable upon any default of payment by his principal."

In the notes of decision to Section 3–106 of the Uniform Commercial Code,[30] the case of Mackintosh v. Gibbs [31] is cited for the proposition that an acceleration provision and a provision for attorney fees in a promissory note does not affect its negotiability. Also an award of attorney fees to the payee was held proper in a suit to collect the balance on an installment promissory note in First Savings & Loan Association of Jersey City v. Heldman.[32] Thus, Mr. Sylk's resistence to liability under the acceleration clause and for attorney's fees is also overcome.

 Research of the files in the District Court reveals an affidavit by counsel for Warner-Lambert itemizing his bill by hours and parts thereof, disclosing that an aggregate of 74 hours and 15 minutes was applied to the litigation, together with expenses disbursed in the sum of $154.00. Based on these figures, the allowance of $3,866.50 by Judge Gorbey as against the request for $5,000.00 appears reasonable.

The results at which the District Judges arrived in this case are found to be correct. Hence the Orders of the United States District Court for the Eastern District of Pennsylvania of December 31, 1970 and August 20, 1971 in favor of Warner-Lambert Pharmaceutical Company against William Sylk will be affirmed.

29. 115 N.J.L. 388, 392, 180 A. 862 (Sup.Ct. 1935).

30. 12A N.J.S.A., notes 2 and 3.

31. 81 N.J.L. 577, 80 A. 554 (E. & A. 1911).

32. 79 N.J.Super. 65, 190 A.2d 400 (1963).