NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4428
_____

KEVIN W. McNUTT; GLORIA J. McNUTT, H-W,
Appellants

v.

ESTATE OF BARRY D. McNUTT;
ANDREA H. KASARSKY, H-W, Individually and Jointly

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 09-cv-00002
(Honorable Freda L. Wolfson)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 2, 2010

Before: SCIRICA, JORDAN and VANASKIE, Circuit Judges

Filed: July 7, 2010
_____

OPINION OF THE COURT
_____

PER CURIAM.

Kevin W. McNutt and Gloria J. McNutt ("Appellants"), husband and wife

proceeding pro se, appeal the order of the District Court denying their motion for

summary judgment, granting the appellees' motion for summary judgment, and dismissing the complaint. For the following reasons, we will affirm.

## I.

This case arises out of an alleged oral agreement between Kevin McNutt and his brother, Barry McNutt, regarding the ownership and upkeep of three lots of land. In the 1970s, appellants acquired a land parcel that had been owned by Kevin and Barry's parents, which was divided into three lots: Lot 25, 25.02, and 25.03. In 1984, appellants sold Lot 25.03 to Equity Lenders Corporation to avoid foreclosure.

Appellants claim that Kevin took responsibility for Barry's felony theft of electrical services on the Lots in 1984. In exchange, they allege, they entered into an oral "real estate contract" in 1987 (the "1987 Agreement") with Barry at an attorney's office[1], wherein Barry agreed to (1) obtain a mortgage on Lot 25.02; (2) disburse funds from the mortgage to appellants; (3) underwrite and pay for all maintenance and repair needs on the Lots; and (4) satisfy the Equity Lenders mortgage on Lot 25.03.[2] Three months before the alleged agreement, Barry purchased Lot 25.02 from appellants for $130,000, paying $30,000 in cash and obtaining a purchase money mortgage for the remaining $100,000.

---

[1] The attorney declares that while both Kevin and Barry were clients of his, there was never a meeting at his office.

[2] Barry's wife at the time, Martha Heisel, who appellants claim attended the meeting with her father, now deceased, also declared that she did not attend any such meeting and denied any knowledge of a contract between Kevin and Barry. She did state that Barry had spoken of appellants' money troubles and that Barry purchased a piece of property to assist them.

2

Although Barry was the purchaser, appellants allege that they paid and satisfied the mortgage in full in April 2002.[3] Later in 1987, Barry purchased Lot 25.03 from Equity Lenders for $29,400, paying $14,400 in cash and obtaining a purchase money mortgage for the remainder. The mortgage is still unsatisfied, but no foreclosure or other collection proceedings have commenced. Appellants produced sixteen checks from Barry to Kevin between June 2001 and November 2003, totaling $21,571, the memo lines of which indicate the payments were for equipment, repairs, and gifts.

Appellants allege that, in a 2003 three-way phone call between Barry, Barry's wife Andrea Kasarsky, and Kevin, Barry instructed Kasarsky to continue funding the 1987 Agreement.[4] Barry died shortly thereafter; his will bequeathed Lots 25.02 and 25.03 to Kevin. Appellants produced eight checks from Kasarsky to Kevin between November 2004 and May 2007, totaling $26,696.99, and six letters from Kasarsky, some of which reference the checks. The memo lines indicate that the checks were for insurance, truck expenses, and Christmas presents. Kasarsky declared that she sent money to Kevin out of kindness and concern and that she encouraged Kevin to find work and earn income by renting out the Lots. Eventually, Kasarsky declared, she refused to send any more money to appellants after Kevin filed a construction lien against her in 2008.

_____

[3]The District Court noted that appellants submitted seven sporadically dated checks signed by Gloria to Barry for $1,125.00 each. Because the court found for appellees on other grounds, it did not reach the question whether appellants made any payments on the mortgage.

[4]Kasarsky denies that the 2003 phone call took place.

Appellants filed suit[5], raising claims for breach of contract and seeking damages in the amount of $650,000 plus interest, plus punitive damages. They also sought an unspecified amount to satisfy a mortgage on one of the lots of land in question. In a strongly worded conclusion, the District Court dismissed the complaint with prejudice. Appellants filed a timely appeal.

## II.

We have jurisdiction under 28 U.S.C. § 1291. In reviewing a District Court's grant of summary judgment, we exercise plenary review, and apply the same standard that the District Court is required to apply. Regents of Mercersburg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 163 (3d Cir. 2006); Fed. R. Civ. P. 56(c). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Fed. R. Civ. P. 56(c). The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." Saldana, 260 F.3d at 232 (internal citations omitted).

---

[5]Appellants filed suit in the Superior Court of New Jersey, Law Division, Hunterdon County. Appellees removed the case to federal court. The District Court's jurisdiction was proper under 28 U.S.C. § 1332.

A factual dispute is genuine if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and it is material only if it might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). A plaintiff's proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. Anderson, 477 U.S. at 255. If appellants failed to "make a showing sufficient to establish the existence of an element essential" to their case, and for which they bear the burden of proof at trial, there can be no "genuine issue as to any material fact," and we must affirm the entry of summary judgment. Celotex, 477 U.S. at 322-23.

III.

After thorough review of appellants' arguments on appeal, in light of the record, we conclude that the District Court properly granted summary judgment for appellees. Appellants alleged in the first two counts that Kasarsky has the responsibility, both personally and as executrix of Barry's estate, to continue to pay funds under the 1987 Agreement and that her failure to do so was intentional. Appellants may bring an action for breach of contract against the estate and Kasarsky as its representative if they could have brought the same action against Barry during his lifetime. See Flicker v. Chenitz, 150 A.2d 688, 692 (N.J. Super. Ct. App. Div. 1959). To establish that a valid contract existed, a claimant must show that an offer, acceptance, and consideration existed, Cont'l

5

Bank of Pa. v. Barclay Riding Academy, Inc., 459 A.2d 1163, 1171-72 (N.J. 1983), and that the parties reached a "meeting of the minds." DeVries v. Evening Journal Ass'n, 87 A.2d 317, 318 (N.J. 1952).

We agree with the District Court that appellants have presented no documentary evidence of the 1987 Agreement's offer or acceptance. Because appellants' case "depends upon oral testimony with respect to statements or acts by . . . [Barry], . . . the entire cause of action must be proven by clear and convincing evidence." Chance v. McCann, 966 A.2d 29, 48 (N.J. Super. Ct. App. Div. 2009) (applying New Jersey's "Dead Man's Act," N.J. Stat. Ann. § 2A:81-2). Appellants' only evidence that the 1987 meeting took place and that an agreement was reached is their own self-serving testimony. The other alleged attending witnesses denied ever participating in such a meeting. Likewise, the checks for repairs, equipment, and gifts from Barry and Kasarsky are sporadic and insufficient to prove the existence of a contract under a course of conduct theory. Accordingly, we agree with the District Court that appellants have failed to set forth facts showing that there is a genuine issue for trial. See Saldana, 260 F.3d at 232.

The District Court also properly found that even if the 1987 Agreement existed, it would be unenforceable because it is illegal. See Duff v. Trenton Beverage Co., 73 A.2d 578, 584 (N.J. 1950); N.J. Stat. Ann. § 2C:29-4 ("A person commits a crime if he . . . agrees to accept any pecuniary benefit in consideration of refraining from reporting to law

6

enforcement authorities the commission . . . of any offense"). As the District Court reasoned, appellants' alternate position is that Barry agreed to help his brother out of kindness, which means he was not contractually obligated to do so.[6]

We also agree with the District Court that Kasarsky cannot be held personally liable for the 1987 Agreement because she has received no consideration. Appellants claim that Barry instructed Kasarsky to continue making payments pursuant to the 1987 Agreement after his death. They point to the eight checks and six letters Kasarsky wrote to appellants as proof of her intent to be bound. However, an agreement to modify an existing valid contract must be supported by consideration. Warner-Lambert Pharm. Co. v. Sylk, 471 F.2d 1137, 1143 (3d Cir. 1972) (internal citations omitted). Appellants claim Kasarsky received the benefit of the repairs they made to the Lots. However, Kasarsky has never owned any of the Lots. Accordingly, we agree that, even presuming a valid contract existed, Kasarsky never received any consideration that would bind her to a modification, and as such, the 1987 Agreement is unenforceable against her.

In Counts Three and Four, appellants argue that Barry is the owner of record of Lot 25.03; that Kasarsky, both personally and as executrix, is obligated to satisfy the unpaid mortgage on that lot; and that her failure to do so is deliberate and intentional.

---

[6]The District Court also considered that to the extent appellants raised a claim for unjust enrichment, the claim fails because they cannot show that Barry unjustly retained any benefit without payment. See VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994).

7

The District Court properly denied these claims. For the reasons stated above, Kasarsky, in either capacity, is not bound by the terms of the 1987 Agreement. Moreover, Kevin is the owner of Lot 25.03, pursuant to Barry's bequest.

Finally, in their brief to this Court, appellants argue that the estate should have taken action to transfer title to Lots 25.02 and 25.03 to Kevin, and point to a letter from Kasarsky in which she stated that she "hope[d]" to have titled transferred to him. They claim that the District Court erred in failing exercise its equitable powers to clear title to the lots, "free and clear of any mortgages." Appellees correctly note that appellants did not raise this claim below. As such, the claim is waived. See, e.g., Medical Protective Co. v. Watkins, 198 F.3d 100, 105 n.3 (3d Cir. 1999); Barnes v. Am. Tobacco Co., 161 F.3d 127, 155 n.36 (3d Cir. 1998).

Accordingly, we will affirm the judgment of the District Court.